MORRISON *v.* GRASS.

1. AUTOMOBILES—PEDESTRIANS AT CROSSWALK—ORDINANCES—EVIDENCE—NEGLIGENCE—QUESTION FOR JURY.

In actions by pedestrian and her husband against defendant motorist, where there is evidence that defendant violated ordinance according right of way to pedestrians crossing roadway within a crosswalk, the question of whether or not defendant was guilty of negligence was for the jury (Detroit Ordinance No. 115–D, § 14 [h]).

2. SAME—PEDESTRIANS AT CROSSWALK—CONTRIBUTORY NEGLIGENCE—ORDINANCES—QUESTION FOR JURY.

Question of contributory negligence of pedestrian, injured by eastbound automobile when she was crossing southerly on crosswalk at a street intersection on traffic lane defendant had been using on a main-traveled thoroughfare about 5 p. m. in April when weather was normal, pavement dry and there was no obstruction to either her view or that of approaching motorist in city having ordinance requiring motorist to yield pedestrian's right of way in such cases *held,* for jury where plaintiff, in crossing street 76 feet between curbs with street-car tracks occupying about 14½ feet of center, she observed

Contributory negligence of plaintiff pedestrian a question of fact for the jury, see 2 Restatement, Torts, § 434, comment c; standard of conduct defined, §§ 283–285; function of jury and causal relation between harm and negligence, § 465; contributory negligence defined, § 463.

car as she was on southernmost streetcar rail and saw that it was about 200 feet away midway between south rail and curb, and would herself have to go about 20 feet to insure safety and about 30 feet 9 inches to be sure of perfect safety (Detroit Ordinance No. 115–D, § 14 [h]).

3. ACTION—HUSBAND AND WIFE—INJURY TO WIFE—CONSOLIDATED ACTIONS.

Recovery by husband for damages sustained by reason of injuries to his wife is contingent upon recovery by her for injuries where their respective actions were consolidated.

BUTZEL, C. J., and BOYLES and NORTH, JJ., dissenting in part.

Appeal from Wayne; Murphy (George B.), J. Submitted June 13, 1945. (Docket Nos. 58, 59, Calendar Nos. 43,088, 43,089.) Decided March 5, 1946.

Separate actions of case by Carre W. Morrison and Colin D. Morrison against Sadie S. Grass for damages for personal injuries sustained by Carre W. Morrison when she was struck by defendant's automobile. Cases consolidated. Verdicts and judgments for plaintiffs. Defendant appeals. Affirmed.

*G. Leslie Field,* for plaintiffs.

*Howard D. Brown* (*Paul R. Erickson,* of counsel), for defendant.

REID, J. Plaintiff Carre W. Morrison sues to recover damages for injuries she received when she was struck by defendant's automobile as she was walking across Grand River avenue in the city of Detroit at the intersection of Prevost avenue. Plaintiff Colin D. Morrison, husband of Carre W. Morrison, sues for damages sustained by him by reason of the injuries to his wife. Verdict in each case was in favor of plaintiff. There were special questions

submitted to and answered by the jury. Defendant appeals. The two cases were consolidated for trial and again on appeal.

Grand River avenue is a main-traveled thoroughfare running from downtown Detroit to Lansing and Grand Rapids. At the intersection in question it runs in a northwesterly-southeasterly direction, 76 feet wide between curbs. Double streetcar tracks take about 14½ feet of the center, and the pavement between each curb and the nearest rail is 30 feet, 9 inches wide. In the testimony the northwesterly direction of Grand River is called west and the southeasterly direction, conversely, is called east.

On April 8, 1943, plaintiff Carre W. Morrison, hereinafter referred to as plaintiff, left her employment in a downtown Detroit bank and boarded a streetcar on her way to her home, which was near Grand River and Prevost avenues. She left the car a few blocks before reaching Prevost and did some shopping. She then walked to the northwest corner of Grand River and Prevost avenues, where she intended to cross Grand River avenue on foot from the northwest to the southwest corner of the intersection. She selected that crossing because it is a better place to cross than any other street along there and the streetcars stop there. It was then about 5 p. m., still daylight; the pavement was dry and weather normal. Plaintiff carried her purse, which was not large, in her right hand, and in her left hand below the level of her shoulder she carried two light packages.

When plaintiff got to the northwest corner of the intersection, she waited for westbound Grand River traffic to clear. Having noted that the traffic was clear going westerly, she walked south to the streetcar tracks. When she got to the farthest track to the south, she saw the car driven by defendant, mid-

way between the streetcar track and the curb, coming toward her in the block to the west between Prevost and Rutherford streets. The defendant's car was about one-third into the block, in other words, about 200 feet from plaintiff, when plaintiff was at the southerly track, at which point plaintiff hesitated, took in the situation, did not stop, and had plenty of time to cross, according to her judgment. The defendant at no time slackened the speed of her car and did not see plaintiff leave the streetcar track.

Defendant testified that just before the accident she was looking around to her right for a period of time described by her as a breath or two. After the breath or two, defendant looked ahead and for the first time saw plaintiff, who was then directly in front of her car about 30 feet away. Defendant testified she became frozen stiff with excitement, did not swerve her car to the right or left, did not slacken her speed nor apply her brakes, and did not blow her horn. Defendant's car struck plaintiff at a point about 10 feet from the southerly curb. The right outer portion of the right front fender of defendant's car struck plaintiff on the rear portion of the right hip.

The ordinance of the city of Detroit received in evidence is as follows:

"When traffic control signals are not in place or not in operation the driver of a vehicle shall yield the right of way slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into

the path of a vehicle which is so close that it is impossible for the driver to yield.''

The question as to the rate of speed of the defendant's car was not submitted to the jury because plaintiff's counsel admitted that the defendant's car did not at any time travel at a speed greater than 25 miles per hour.  Questions 2, 3 and 4 are as follows:

(2) Did the defendant's automobile travel at the same speed from the time it was first seen by the plaintiff until the collision occurred?
Answer of the jury: Yes.
(3) Did the defendant's automobile travel in the same lane of traffic on Grand River avenue from the time it was first observed by the plaintiff until the collision occurred?
Answer of the jury: Yes.
(4) Did the impact occur in the second traffic lane from the south curb of Grand River avenue?
Answer of the jury: Yes.

While walking from the south rail to the point of collision, plaintiff walked rapidly as people do when they know traffic is coming; she continued to observe the approach of the car and considered she was safe. The distance from her place at the south rail, where she says she hesitated but did not stop, to the southerly edge of the second traffic lane, in which lane the jury's answer to question 4 says the accident occurred, was approximately 19 feet.  When she was at the southerly streetcar rail, defendant's car was estimated by her to be two-thirds of a block away, about 200 feet.   The jury could have considered that her walk was at the rate of three miles per hour and that the automobile was approaching her 8 1/3 times as fast as she was walking, and therefore, while she was walking 19 feet the car would travel about 158 feet.   This would leave her about

42 feet clearance. We cannot say therefore as a matter of law that she was contributorily negligent in concluding that she could safely walk to a point where she would be beyond the path of the oncoming automobile of defendant, and in proceeding so to do.

After plaintiff had arrived at a point where she was within 4 or 5 feet of entirely clearing the path of the oncoming car, it would evidently be necessary for her to look over her right shoulder to continue her observation of the car. Her vision past her shoulder was clear and her parcels did not interfere with her line of vision. At the last time that she looked over her shoulder, very shortly before the collision, she concluded that she was already safe. Evidently it was then necessary for her to further note traffic conditions ahead of her, besides noting the possibility of the approach of other cars in the farthest lane.

While it is true that the defendant claimed in an early part of her testimony that she saw plaintiff ''dive'' from a place of safety at the streetcar tracks into a position in front of her car, this testimony is contradicted by testimony given by witness Silverman, whose car followed defendant's car, that she told him she was looking in her rear-view mirror, in which case she could not be noting the actions of plaintiff. Defendant's testimony is also contradicted by her own later testimony that just before the accident she heard a sound like a police whistle, glanced to the right for the space of a breath or two, and that when she again looked ahead there was the plaintiff, whom she then saw for the first time, about 30 feet from her in front of her car. No witness other than defendant testified that plaintiff ''dove'' in front of defendant's car.

The testimony reveals the extraordinary nature of the accident in question, namely, that a driver having a perfect opportunity to see plaintiff while

plaintiff was traveling 19 feet in front of her across the path of her car, and being under the command of the ordinance required to give the pedestrian the right of way, with no traffic to her right or left, did not swerve her car to any appreciable degree, did not sound her horn, did not slacken her speed, and ran the pedestrian down. It was for the jury to say whether an ordinarily prudent person in plaintiff's situation would have acted on the assumption that defendant would obey the ordinance and not be guilty of the very extraordinary negligence just recited.

It cannot be said as a matter of law that plaintiff's failure to jump out of the way of the car at the last moment is necessarily to be considered contributory negligence under all the circumstances of this case. It was for the jury to say whether an ordinarily prudent person would have done as plaintiff did in the instant case.

Defendant relies on the case of *Haley* v. *Grosse Ile Rapid Transit Co.*, 290 Mich. 373. In that case plaintiff's decedent crossed on foot in the middle of a block about 150 feet east of an intersection, while it was getting dark, and it was testified that he came out into the street when the bus was 150 feet away from him, traveling 35 to 40 miles per hour. In that case we say, p. 377:

"A moment's hesitation before reaching the car track, or one backward step, would have avoided the accident entirely."

It is evident that in that case the decedent could not have formed a reasonable judgment that he was safe and must have ignored the approaching bus, and could by no possibility have safely crossed in front of the bus. The circumstances of that case differentiate it from the instant case.

We have in mind *Moldenhauer* v. *Smith*, 311 Mich. 265, in which case the plaintiff left a place of safety

in the middle of the street at midnight, misjudged the nearness of the automobile, started to travel 26 feet to cross the path in front of the car at a time when she was too near to permit the driver to stop his car, which was about 75 or 92 feet from her when she started to cross the farther half of the street. It is well known that in observing an approaching car after nightfall, a judgment as to the proximity or speed of the car, based on observation of headlights or otherwise, may prove to be unreliable and inaccurate. Plaintiff's claim in that case was in part based on a claimed unanticipated and excessive rate of speed. That case cannot be said to afford a standard for determining claimed contributory negligence of the plaintiff in the instant case.

In the cited case of *Beers* v. *Arnot*, 308 Mich. 604, plaintiff Beers made no accurate estimate of the proximity of the car and fell so far short of assuring himself of safety that although at the last he made an effort to leap out of the way of the car, he could not avoid the collision. The circumstances of that case differentiate it from the instant case, there being no ordinance requiring Arnot to yield the right of way to Beers. Plaintiff under the circumstances of that case had no right in entering upon the path of the car to assume that the driver of that car would or could avoid the collision. The facts in that case indicate that it was not in the power of Arnot, the driver, to avoid the collision at any time after Beers' action showed his intent to cross in front of the car.

The trial judge relied on *Moore* v. *Noorthoek*, 280 Mich. 431, in which we say at p. 437:

"In *Guina* v. *Harrod*, 275 Mich. 393, this court said:

" 'Pedestrians have the right to cross the street at street crossings even on a through street. They

are not required to anticipate that drivers will violate ordinances, statutes or rules of safety.'

"In *Petersen* v. *Lundin,* 236 Mich. 590, we said:

" 'There is no rule of law requiring a pedestrian to rivet his eyes on an approaching automobile. He should look but if, having looked, it appears safe to cross, he may proceed, and his care is not to be determined solely by the fact he was struck and was not at that second looking at the automobile.'

"In the case of *Nickels* v. *Hallen,* 247 Mich. 291, the plaintiff was crossing Main street at an intersection in the nighttime and was struck by defendant's automobile. The court said:

" 'The intersection was well lighted and no traffic interfered with view of pedestrian or car driver, and yet plaintiff claimed he looked before and while crossing, and did not see the car until it struck him, and the driver claimed he did not see plaintiff until the car was about two feet from him. When plaintiff left the curb to cross the street he saw a car coming, 100 feet, or more, away. That was, undoubtedly, the car which struck him. Whether plaintiff exercised reasonable care under the particular circumstances described by him was a question of fact for the jury and not of law for the court, and the trial judge was right in so holding.' "

The question of plaintiff's contributory negligence was properly submitted to the jury.

Judgment for plaintiff in each case is affirmed. Costs in each case in favor of plaintiff.

BUSHNELL and STARR, JJ., concurred with REID, J.

SHARPE, J. I concur in the result reached by Mr. Justice REID. There was evidence that defendant violated the city ordinance.* It was for the jury to determine whether or not defendant was guilty of negligence in her operation of the automobile.

---

* Detroit Ordinance No. 115-D, § 14 (h).—REPORTER.

Whether plaintiff Carre W. Morrison was guilty of contributory negligence as a matter of law presents a more serious question. As Mrs. Morrison started to cross the southerly portion of the street she saw defendant's car about 200 feet away. In order to be sure of perfect safety, Mrs. Morrison would have to travel a distance of 30 feet 9 inches, but inasmuch as defendant's car was approaching in the middle of the southerly portion of the street, it was only necessary for Mrs. Morrison to walk a distance of approximately 20 feet in order to insure her safety.

In *Moore v. Noorthoek,* 280 Mich. 431, we said:

"In the case at bar the evidence shows that defendants' car was 164 feet away when plaintiff started to cross the west half of the intersection, a distance of 21 feet. She had a right to assume that defendant would drive the car in compliance with the city ordinance which gave plaintiff the right of way at such crossings and whether plaintiff exercised reasonable care under the circumstances was a question of fact for the jury."

In my opinion the contributory negligence of plaintiff Carre W. Morrison was a question of fact.

Notwithstanding my conclusion that the judgment in the instant case should be affirmed; nonetheless I concur with Mr. Justice BUTZEL in his statement of the law governing the right of recovery in so-called dependent or companion cases.

The verdict of the jury should not be disturbed. Judgment affirmed, with costs to plaintiff.

BUSHNELL, REID, and STARR, JJ., concurred with SHARPE, J.

BUTZEL, C. J. (*dissenting in part*). The verdict should have been directed in favor of defendant in both cases. Plaintiff Carre Morrison was guilty of

contributory negligence as a matter of law. She deliberately walked into the path of an oncoming car. She testified that she had her eye on the car at all times. The car was not going at an illegal rate of speed. It is conceded by plaintiff that the car did not travel at a speed of more than 25 miles per hour. The only positive testimony we find is that of defendant who testified that she was going 24 miles an hour. However, assuming that the testimony be construed as showing 25 miles per hour, defendant was going at the rate of 36.66 feet a second. Mrs. Morrison testified that she first saw the car when it was one-third down the block. Assuming that then it was 200 feet from the crossing, although the map produced in evidence indicates that the block was less than 300 feet long, it would have taken defendant less than 5½ seconds to reach the crossing. Mrs. Morrison testified that she proceeded rapidly but did not run. It would have taken her over 4 seconds to traverse the 19 feet to the point where she was struck. When she left the car track she could plainly see that an accident was likely to occur. She admitted that she hesitated. She decided to take a chance. She lost. When she proceeded across the lane next to the streetcar tracks and reached the second lane, she could plainly see that defendant's car had advanced to a point so near that if she proceeded any farther at the same rate of speed she would be struck. Had she stopped for a second or two, or had she run, instead of walking rapidly, as she testified, she would have cleared the distance. It must be borne in mind that a pedestrian can stop instantly. Defendant claims that as she approached the crossing her attention was diverted for a moment by a noise that sounded like a policeman's whistle and that when she again looked ahead Mrs. Morrison suddenly stepped out into the middle of the road beyond the streetcar tracks and

ran into the path of defendant's oncoming car. The only disinterested testimony is that of a driver who was driving his truck back of defendant's car, and, although he was looking straight ahead, he did not see Mrs. Morrison at all until she was right in the path of the defendant's oncoming car. This tends to support defendant's claim that Mrs. Morrison rapidly ran out from a place of safety into the path of the car. However, assuming that defendant was guilty of negligence, plaintiff also was guilty of contributory negligence. The driver of a car has a right to believe that a pedestrian will show at least ''horse sense'' and stop when she sees a car coming rapidly toward her and which will strike her if she proceeds into another lane of traffic. Could pedestrians walk into the path of an oncoming car without exercising ordinary care and rely entirely upon an ordinance which they claim gives them the right of way, it would result in confusion, accidents and litigation. The ordinance also demands proper conduct upon the part of the pedestrian. She cannot walk rapidly into the path of a car that is but a short distance away, claim the benefit of the ordinance, and at the same time disclaim her contributory negligence. She knew the danger she was running when she hesitated.

The trial judge correctly charged the jury that if it found Mrs. Morrison failed to look, or found that she did look and walked directly into the path of an approaching automobile, so that an accident could not be avoided, it must be found that she was guilty of contributory negligence. However, the jury found for plaintiff. Plaintiff emphasizes the importance of the ordinance set forth in Mr. Justice REID's opinion and the case of *Moore* v. *Noorthoek*, 280 Mich. 431, where a somewhat similar ordinance was considered. However, in the latter case, the ac-

cident happened at nighttime, the street plaintiff attempted to cross was narrow, and plaintiff had barely crossed the car tracks when she was struck. In that case, defendant's car was traveling in excess of the speed limit in the business section of Grand Rapids, which provides a maximum speed of 15 miles per hour. In the instant case, it was broad daylight, and defendant was observing the speed limit. It is generally known that a pedestrian has difficulty in correctly judging the rate of speed of a car approaching in the nighttime. In *Moore* v. *Noorthoek, supra,* we held in regard to contributory negligence that it did become a jury question as to whether an ordinarily prudent man would not have a right to assume that a driver of a car would observe the laws in regard to speed in a business district and particularly under the other circumstances presented. Even though in the instant case we assume that the defendant was negligent, that does not excuse Mrs. Morrison from her own negligence. We realize that the facts in cases differ but we have adhered firmly to one principle which is set forth in a long line of cases.

In *Haley* v. *Grosse Ile Rapid Transit Co.,* 290 Mich. 373, we said:

"The witness testified that as the bus approached Haley, the driver made no effort to slacken his speed or to swerve to the left to avoid striking him. The brakes were not applied until after the impact. The record leaves no doubt that the defendant was guilty of negligence in operating its bus in this irresponsible manner and in excess of the legal rate of speed. The sole question is whether the issue of Haley's contributory negligence should have been submitted to a jury for determination.

"Although the testimony is viewed in a light most favorable to plaintiff, the decision of the trial court must be sustained. According to the witness, Haley

came out into the street when the bus was 150 feet away from him, traveling 35 to 40 miles per hour. There was nothing to prevent observation of the approaching vehicle by the pedestrian; the man's view of the driver, the witness testified, was as good as the driver's view of the man. As he stepped out onto West Jefferson avenue, decedent was seen to look in the direction of the approaching bus, but he continued on toward the center of the street despite his observation. 'He kept on walking while he was looking until he got hit,' the witness said.     *     *     *

" 'Vigilance is an essential and available safeguard of life and limb in this automobile age and reasonable care requires constant exercise of the faculty of sight while crossing a city street.' *Halzle* v. *Hargreaves*, 233 Mich. 234.     *     *     *

"As a reasonable man, decedent would not have walked into the path of the bus, which struck him between the radiator and the fender about a foot from the extreme right corner of the bus, if he has seen it approaching him. He must not then have 'seen' it although it was in plain view. In that event he was guilty of contributory negligence as a matter of law. *Halzle* v. *Hargreaves, supra; Molda* v. *Clark*, 236 Mich. 277; *Brodie* v. *City of Detroit*, 275 Mich. 626."

In *Dokey* v. *Carpenter*, 300 Mich. 648, we said:

"Defendant calls attention to numerous cases involving accidents occurring either in the day or nighttime, and in which we have held plaintiff ordinarily may not recover if he steps into the path of an oncoming car coming in a straight direction. Under ordinary conditions, it is the rule that the pedestrian must look and keep on looking, see what it is plain to see, and thus avoid being struck by a car coming in a straight line towards him. *Haley* v. *Grosse Ile Rapid Transit Co.*, 290 Mich. 373; *Sloan* v. *Ambrose*, 300 Mich. 188. No general rule can be

stated, however, that will govern all factual situations.''

In *Knight* v. *Merignac,* 281 Mich. 684, we said:

.''The rule as to one who drives into an intersection without looking and is hit by another car over which he has the right of way was stated in *Kerr* v. *Hayes,* 250 Mich. 19, as follows:
'' 'These cases, however, also point out that the statutory right of way is not an assurance of safety, nor an absolute right in all conditions, but that both drivers must use due care.  A driver cannot continue to assume that the one on the left will accord him right of way when the circumstances would indicate the contrary to a reasonable person.' ''

In *Koehler* v. *Thom,* 285 Mich. 593, we said in regard to a failure to observe a statute:

''It is the claim of plaintiffs that the driver of plaintiffs' car had the right of way (1 Comp. Laws 1929, § 4712 [Stat. Ann. § 9.1580]) and had a right to assume that defendant would accord him the right of way.  It is elementary that if plaintiffs are to recover they must show that the driver of their car was free from contributory negligence, none of plaintiffs being minors.  *  *  *
''The principles of law applicable to the factual situation presented in this cause are found in *Kerr* v. *Hayes,* 250 Mich. 19, where Mr. Justice FEAD speaking for the court said:
'' 'The statutory right of way is not an assurance of safety, nor an absolute right in all conditions, but *  *  * both drivers must use due care.  A driver cannot continue to assume that the one on the left will accord him right of way when the circumstances would indicate the contrary to a reasonable person.
'' 'The rules announced in these cases presuppose that a driver has made suitable observation of approaching cars, and, from the conditions as they ap-

peared to him, has formed a reasonable belief that, he could cross in safety. As plaintiff did not look to the left he could not have formed any belief from the conditions. He is chargeable with having seen what he should have seen, that defendant's car was about twice the distance from the crossing as his own, approaching at about twice his own speed, without, at any time, giving any indication of according plaintiff the right of way, and that a collision was inevitable unless he took measures to avoid it.'

"In *Block* v. *Peterson,* 284 Mich. 88, we said:

" 'The statutory right of way is not an assurance of safety, nor of absolute right under all conditions. Both parties must use due care. A driver cannot continue to assume the one on the left will accord him the right of way when the circumstances would indicate the contrary to a reasonable person. *Kerr* v. *Hayes,* 250 Mich. 19. It was incumbent upon both plaintiff and defendant in approaching the intersection to use care commensurate with the obvious circumstances regardless of which had the favored road. *Benson* v. *Tucker,* 252 Mich. 385. Though plaintiff may have had the right of way at the intersection, the duty was incumbent upon him to exercise reasonable care for his own safety. One must exercise due care when attempting to cross streets and intersections whether on foot or driving an automobile. One is not free from contributory negligence who observes an automobile coming on the intersecting street and then proceeds to cross without giving further heed to the oncoming vehicle until the instant before or at the time of collision. *Ude* v. *Fuller,* 187 Mich. 483; *Geeck* v. *Luckenbill,* 215 Mich. 288; *Smith* v. *Ormiston,* 242 Mich. 600.'

"Under the facts as shown in this cause, plaintiffs' driver with the use of ordinary care could have prevented the accident. His failure to use such care makes him guilty of contributory negligence and precludes his recovery.

"The judgment of the lower court is reversed, without a new trial."

In *Afman* v. *Kraker,* 305 Mich. 504, we said:

"Plaintiff says he figured that the defendant would give him the right of way. Apparently he figured wrong. Insisting on one's right of way may be temporarily satisfactory but ultimately expensive. The fact that plaintiff approached the intersection on defendant's right was not an assurance of safety, plaintiff was still under the necessity of using due care, and did not do so. *Kerr* v. *Hayes,* 250 Mich. 19; *Koehler* v. *Thom,* 285 Mich. 593.

"See, also, *Ayers* v. *Andary,* 301 Mich. 418; *Francis* v. *Rumsey,* 303 Mich. 526."

In *Pearce* v. *Rodell,* 283 Mich. 19, defendant appealed a judgment for the plaintiff on the grounds of error, among other things, that the charge to the jury was erroneous. No directed verdict was requested. The charge to the jury in question and this court's comments thereon are as follows:

" 'Pedestrians upon the public highway have a right to assume in the first instance the driver of an automobile will use ordinary care and caution for the protection of pedestrians, nevertheless the pedestrian must not rest content on such assumption, if there comes a time where he knows, or ought to know by the exercise of reasonable care, he is being placed in danger. He must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances.'

"The court very fully charged the jury in relation to the contributory negligence of the plaintiff, and we find no error in the charge."

In *Moldenhauer* v. *Smith,* 311 Mich. 265, we said:

"Accompanied by her husband, plaintiff, crossing East Genesee avenue in a northerly direction on the

west crosswalk, paused in the center of the street to await the passing of two motor vehicles proceeding in a westerly direction. She then observed defendant Andrew Smith's automobile coming from the east about 75 feet from where she was standing. Believing that she could continue in safety she rapidly crossed the remainder of the avenue. As she was about to reach the northerly curb she observed the Smith car bearing down on her, attempted to run and jump out of the way, but was struck.''

It was argued that it was prejudicial to charge the jury:

'' 'If you find that she was guilty of any negligence at all, no matter how slight, which contributed to this accident, she cannot recover, even though you might find that Olson Smith, the driver, was also guilty of negligence.'

''According to appellant, another portion, in which plaintiff's pedestrian right of way was discussed, attempted to belittle the city ordinance providing for such right of way. It is also urged that it was error to charge plaintiff with contributory negligence if she attempted to cross the intersection when defendant's automobile was so near the crosswalk, and it was error to charge the general rule to be that a pedestrian 'must look and keep on looking, see what is plain to see, and thus avoid being struck by a car coming in a straight line toward her.' Other criticisms are made of the court's charge, the most strenuous of which is with respect to defendant's request No. 13, which was given in full as follows:

'' 'If you find that plaintiff took a chance in crossing in front of defendant's vehicle and was injured because of it, the plaintiff would be guilty of contributory negligence and your verdict should be of no cause of action in favor of the defendant.'

''It is claimed that this portion of the charge made it impossible for plaintiff to recover under any circumstances, in that:

" 'People take chances every day in practically everything they do and the crossing of a street in a downtown business district having heavy traffic is always taking a chance in the common usage of that word.' * * *

"In *Moore* v. *Noorthoek,* 280 Mich. 431, where the injured pedestrian, having 21 feet to go to reach the nearest curb, noticed the rapidly-approaching car and ran to escape, it was held that plaintiff's contributory negligence was a question for the jury.

"As was said in *Block* v. *Peterson,* 284 Mich. 88, 94, quoting from *Kerns* v. *Lewis,* 246 Mich. 423:

" ' "While the law accords the right of way, it requires as well, the exercise of at least 'horse sense.' The statute does not authorize one, in approaching a highway crossing, to assume that in all events he may proceed without looking, or, if unable to see, without exercising precaution commensurate with reasonable prudence." ' * * *

"In the instant case the conclusion is inescapable that plaintiff was guilty of contributory negligence, as a matter of law, in leaving a place of safety and proceeding into a zone of danger in the path of a rapidly approaching automobile. Since the trial judge would have been fully justified in directing a verdict for defendant as a matter of law, the claimed errors in the charge become inconsequential."

Also, see *Young* v. *Martinich,* 279 Mich. 267, and *Davidson* v. *City of Detroit,* 307 Mich. 420. We conclude that plaintiff Carre W. Morrison was guilty of contributory negligence as a matter of law.

Colin D. Morrison, plaintiff, in his suit tried together with the wife's suit, cannot recover for medical expenses and loss of services of his wife. This result does not follow because of the principle announced in *Bricker* v. *Green,* 313 Mich. 218; but his right of recovery has been settled in many cases in other States where the doctrine of imputed negligence was not adopted. There appears to be some confusion in the terminology. Instead of using the

term "imputed negligence," at times it has been called "derivative contributory negligence," "consequential damages," "dependent cause of action," or such as arise by equitable or legal assignment or by operation of law, or through agency, or other means. Irrespective of the terminology used, the courts in the majority of cases have denied recovery by the husband for consequential damages to him arising out of death or injury to his wife under circumstances where she would be barred from recovery of damages in what we may term the main case. *Bricker* v. *Green, supra,* did not change the rule as stated in *Dewey* v. *Perkins,* 295 Mich. 611, where we held (syllabus):

"Recovery by husband for loss of his wife's services is contingent upon recovery by her for injuries and medical and nursing services where their respective actions were consolidated."

In *Arritt* v. *Fisher,* 286 Mich. 419, we quoted approvingly from *Shiels* v. *Audette,* 119 Conn. 75 (174 Atl. 323, 94 A. L. R. 1206), which case relied, among others cited therein, on *Callies* v. *Reliance Laundry Co.,* 188 Wis. 376 (206 N. W. 198). This case arose in Wisconsin after the doctrine of imputed negligence had been abandoned. The case is also published in 42 A. L. R. 712, where the copious annotations show that the husband cannot recover for services and medical expenses if the wife herself cannot recover for her injuries.

It should be noted that in the situation here before us the two actions brought separately by the husband and wife were consolidated for trial, on the same issues of fact. Necessarily the result on the issues of negligence and contributory negligence must be reached as to both cases. In so holding, we adhere to the rule that the husband and wife each

have separate independent causes of action. *Las-kowski* v. *People's Ice Co.*, 203 Mich. 186 (2 A. L. R. 586); *Gumienny* v. *Hess*, 285 Mich. 411. But where the two actions are consolidated and tried as one case, recovery by the husband or parent in his action depends on whether there is a recovery in the other case.

For the above reasons both judgments should be reversed without a new trial, with costs to defendant which may be taxed only as one case, there being one record and one set of briefs.

BOYLES and NORTH, JJ., concurred with BUTZEL, C. J. The late Justice WIEST took no part in the decision of this case.