ENTER:

**William G. CARROLL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Betty Ann CARROLL, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Nos. 64 C 110(1), 65 C 79(1).

United States District Court
E. D. Missouri, E. D.

Oct. 1, 1965.

As Amended Jan. 18, 1966.

Thomas P. Howe, Clayton, Mo., for plaintiffs.

Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., for defendant.

HARPER, Chief Judge.

William G. Carroll, in Cause No. 64C 110(1), brought suit against the government for damages for injuries arising out of an accident, and thereafter his wife, Betty Ann Carroll, in Cause No. 65C 79(1), brought suit against the government for damages for loss of consortium by reason of the injuries to her husband, William G. Carroll. Thereafter, the two cases were consolidated for trial by the court. The court has jurisdiction as both cases are brought under the provisions of the Federal Tort Claims Act.

The facts in the case of William G. Carroll disclose that the plaintiff is a member of the United States Naval Reserve. After his service and separation from the Naval Reserve at the close of World War II, plaintiff chose to re-enlist in the Reserve. He was assigned to a unit based at Lambert Field in St. Louis County. In 1957, the Naval Air Station at Lambert Field was closed and plaintiff's unit was transferred to Millington Naval Air Station near Memphis, Tennessee. As part of the Reserve Training the plaintiff was required to attend to minimum number of drills per year. Failure to fulfill this requirement resulted in the reservist's name being placed upon the Active Status Pool list, and made him subject to call into active duty by the order of the President of the United States for a period of 45 days (10 U.S.C.A. § 270).

In 1962, at the end of a four-year enlistment, plaintiff re-enlisted for an additional two-year term, and it was during this enlistment that the accident which resulted in this litigation occurred.

When the plaintiff's unit was first transferred to the Tennessee base a number of the members of the unit chartered a bus to transport them to the weekend drill. Thereafter, the Navy supplied the members of the unit who were going to the Millington Naval Air Station for drills with free transportation via Naval Transport aircraft. The only requirement to be fulfilled was that the members of the unit who desired to take advantage of this transportation submit their names in advance. The purpose of this prerequisite was to enable the Navy to provide an adequate number of aircraft.

On the evening of Friday, March 15, 1963, two Naval aircraft arrived at Lambert Field to transport the men to Millington for their monthly weekend drills. It was during this flight from St. Louis to Millington that the plane crashed, which crash resulted in injuries to the plaintiff.

The defendant admits that the accident was of the type that would not occur unless negligent acts had been committed. The defendant also admits that the plane and crew were in the exclusive control of the United States, and that the crew was acting within the scope of their au-

thority so as to make the United States responsible.

█ At the close of the plaintiff's case the defendant moved for a dismissal on the grounds that the plaintiff had not shown that he was entitled to sue under the Federal Tort Claims Act (28 U.S.C.A. § 1346(b)) since he was within the provisions of 28 U.S.C.A. § 2680(j), and was, therefore, subject to the provisions of Title 10 of the United States Code, more specifically the provisions of 10 U.S.C.A. § 6148(a).

Plaintiff's orders, as exhibited by Plaintiff's Exhibit 28, Enclosure 2, disclose that he was to report for muster at the Millington Naval Air Station at 1800 hours. These orders further show that this time was altered to 2030 hours so as to coincide with the later arrival of the flight bringing the reservists from St. Louis. The orders show that the first time that the reservists were to be considered "on duty" was upon their arrival at Millington Naval Air Station. The presence aboard the Naval Air Transports was not ordered, and there is evidence in the record that not all of the reservists took advantage of the flight but chose to supply their own transportation to the Tennessee base.

The contention that the drill scheduled for Friday evening was voluntary is immaterial since the orders required the plaintiff's presence on the base Friday evening. Plaintiff was en route to a place at which he would be on active duty status upon his arrival. In this respect, the case of Meister v. United States, 319 F.2d 875 (Ct. of Claims, 1963) is controlling. In the Meister case, the United States Court of Claims determined that a Naval Reservist who was ordered to report to a Naval Air Station for an inspection, who had entered the Naval Air Station boundaries pursuant to these orders, had slipped on an ice-covered sidewalk, and who had been injured, was under the provisions of 10 U.S.C.A. § 6148 (a). The determining factor in that case was that the Reservist had entered the base to which he was specifically ordered.

The deciding factor in the present case must be that plaintiff's orders specified his arrival at the Millington Naval Air Station, and made no reference to his mode of travel. The choice of the reservist to take advantage of the free transportation was to his sole advantage, and was not pursuant to any order or directive of the Navy. He was not to be considered "on duty" until he had arrived at Millington.

The fact that the plaintiff was subject to military rules is not determinative since 32 CFR 713.445 specifically states that civilians may be allowed to use military aircraft and such civilians will be subject to such regulations as stated by the Chief of Naval Operations. The mere fact that a civilian may be on his way to a reserve drill does not make him subject to "on duty" status, but the civilian happened to be under the same regulations as the active duty reservists are when they are using military transportation. The regulations specified for civilians pursuant to 32 CFR 713.445 are the same regulations as are specified for military personnel.

The reasonable conclusion to be drawn from the facts is that the plaintiff was not subject to the provisions of 28 U.S. C.A. 2680(j) and is entitled to recover under the Federal Tort Claims Act.

█ Turning to the question of damages claimed by the plaintiff, William G. Carroll, the facts further disclose that after the accident he was taken to the Naval Hospital at Millington Naval Air Station, where he remained in the hospital for some twenty-eight days. He had a superficial cut above his right eye, trouble with his chest for a day or two, and some four or five days after his entry pain in his back and left shoulder. X-rays were taken disclosing a slight fracture of the first lumbar vertebra, but he was given extensive physical therapy and heat packs to his back and shoulder. He was confined to his bed for six days, and thereafter was up and about in the hospital, part of the time in a wheel chair. His chest cleared up and the lacerations he had received

healed with no scar. Soon after he returned to his home he resumed his employment and has continued to be regularly employed since, though at this time he has a better paying job than at the time of the accident. He is now employed by the United States Government, and due to the fact he is a veteran drawing disability pay he received a higher starting grade.

According to the plaintiff's testimony he has been to doctors in St. Louis for stiffness in the neck and some back trouble. His left shoulder has caused him the most trouble, paining him from time to time. At the time of the trial his principal complaint was pain in his left shoulder, which according to the plaintiff, comes and goes, and nervousness. Since the accident he has resumed bowling.

The testimony further disclosed that after his return to his home in St. Louis the Naval Hospital billed him for a thousand dollars for medical charges, and that this plaintiff filed a claim with the Veterans Administration with respect to the accident. The Veterans Administration took care of the hospital bill and the plaintiff was granted $121.00 per month, retroactive to March 15, 1963, for a period to 1967, but on January 1, 1964, this amount was reduced by the Veterans Administration after an examination of the plaintiff to $30.00 per month. At this time an appeal is pending with respect to the reduction of the payments from $121.00 to $30.00 per month.

In United States v. Brooks, 4 Cir., 176 F.2d 482, the court held that in such cases as the one before the court the award to the plaintiff should be diminished by the amount he has received or is to receive from the government by way of veteran disability benefits. The court recognized that prospective disability benefits are uncertain, in that the government may withdraw or decrease them at any time, but that courts have to deal with similar situations from time to time, and the trial courts in cases of this kind must do so by using its best judgment, taking into consideration all the facts and circumstances of the particular case. The Brooks case has been cited many times since, but it is referred to by the court since the Supreme Court in dealing with the case prior to the opinion just cited, 337 U. S. 49, 69 S.Ct. 918, 93 L.Ed. 1200, in reversing the case when originally tried, indicated that such should be considered in making an award in a tort claims action where veterans benefits and hospital benefits had been paid.

█ Up to June 30, 1965, the sum of $1,463.63 has been paid to the plaintiff by the Veterans Administration under his claim filed as a result of this accident, besides the hospital bill. These payments, together with the anticipated future payments, are considered by the court in arriving at the amount of the judgment to which plaintiff is entitled, and considering the injuries to the plaintiff and the fact that he missed very little work as a result of the accident, the court is of the opinion that he is entitled to recover $3,000.00.

█ Turning to the claim of the wife, Betty Ann, we must remember that the Federal Tort Claim statute makes the law of the state where the negligent action occurred govern the liability. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. The accident occurred in Tennessee, and without going into detail the wife's claim is for loss of consortium. Under the Tennessee decisions relating to a wife's action for loss of consortium it has been held that the wife of a negligently injured husband does not have the right to sue for such loss of consortium (Rush v. Great American Ins. Co., 213 Tenn. 506, 376 S.W.2d 454). Since the law of the state where the accident occurred, namely, Tennessee, does not permit such recovery, the plaintiff, Betty Ann Carroll, cannot recover, and judgment in her cause must be in favor of the defendant.

The clerk will accordingly prepare and enter a judgment giving to the plaintiff, William G. Carroll, in Cause No. 64C 110 (1), the sum of $3,000.00, and in Cause

No. 65C 79(1), Betty Ann Carroll, entering a judgment in favor of the defendant. The judgment in Cause No. 64C 110(1) will provide for the allowance of attorney's fees in the sum of $600.00, to be payable out of the $3,000.00.