**Susan G. HARRISON**

v.

**UNITED STATES of America and United States Air Force.**

Civ. No. H–78–494.

United States District Court, D. Connecticut.

Nov. 2, 1979.

530

Wesley W. Horton, Moller & Horton, Hartford, Conn., for plaintiff.

Cheryl Wattley, George J. Kelly, Jr., Asst. U. S. Attys., Richard Blumenthal, U. S. Atty., Hartford, Conn., for defendant.

RULING ON MOTION TO DISMISS

CLARIE, Chief Judge.

The plaintiff, wife of a United States Air Force Captain, brought this action against the United States of America

and the United States Air Force[1] for her alleged loss of consortium, resulting from injuries which her husband suffered in a plane crash while he was an active duty passenger in a military aircraft. The complaint alleges that the defendants were negligent in staffing and maintaining said aircraft, and the plaintiff is now seeking $250,000 damages pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*

▮ The defendant has moved to dismiss this action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the Federal Tort Claims Act does not allow recovery against the United States by this plaintiff. The Court finds that the plaintiff's action arose out of her husband-serviceman's injuries incurred in the line of active military duty and thus falls within the exception to the Federal Tort Claims Act, which retains Governmental immunity for injuries to military personnel incident to their service. The defendant's motion to dismiss is granted and judgment shall enter for the defendant.

### Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(b), 2671 *et seq.*

### Facts

The plaintiff is the wife of Captain John Reginald Harrison of the United States Air Force. She was residing with her husband at Kincheloe Air Force Base in the State of Michigan, when this cause of action arose. She claims governmental negligence in the following respects: (1) that on September 26, 1976, her husband was ordered to travel on a defective and negligently staffed KC–135 aircraft supplied by the defendant; (2) that he was required to fly in his dress uniform rather than a protective flight suit; (3) that the defendant's negligence in the landing of the aircraft caused a crash at Alpena, Michigan; and (4) that Captain Harrison was unable to free himself promptly from the flaming plane, because his seat belt was designed defectively and not authorized for use in a KC–135 aircraft.

The complaint represents that Captain Harrison was burned severely, was hospitalized from September 26, 1976 through January 20, 1977, and thereafter was incapacitated for a considerable period of time. The plaintiff claims that the defendant's negligence caused her the loss of her husband's society, companionship, service, and affection, and all other incidents of the marriage relationship. She also represents that the defendant's negligence in failing to place her in a "non-medical attendant status" caused her unnecessary additional traveling and living expenses in order to be of assistance in the rehabilitation of her husband.

### Discussion of Law

The United States has been traditionally shielded from any suit for damages by the doctrine of sovereign immunity. However, Congress removed some of this protection in 1946 when it passed the Federal Tort Claims Act, thus exposing the Government to suit for the wrongs which its agents or employees commit. 28 U.S.C. § 2671 *et seq.* Congress designated the federal courts as the forum for determining the Government's liability in such matters. Liability may arise from personal injury or property damage caused by the negligence of any Government employee "acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

The Government's general consent to such liability, as expressed under the Tort Claims Act, is limited by a number of statutory and judicial exceptions. *See,* for example, 28 U.S.C. § 2680. At issue in the

---

1. The Federal Tort Claims Act makes the United States of America potentially liable; thus, it is the proper defendant in this action and not the United States Air Force. 28 U.S.C. §§ 1346(b), 2671 *et seq.*

present case is the exception created by the Supreme Court in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), wherein the Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.

The Supreme Court prefaced its holding in *Feres* by noting that although 28 U.S.C. § 1346(b) confers jurisdiction on the district courts to render judgment upon all civil actions against the United States for money damages, this section does not say all claims must be allowed. "[I]t remains for courts, in exercise of their jurisdiction, to determine whether any claim is recognizable in law." 340 U.S. 141, 71 S.Ct. at 157.

The plaintiff asserts that her claim for loss of consortium is "recognizable in law," because it is distinct and separate from any cause of action which her serviceman-husband might have pursued against the defendant, had he not been barred explicitly by the *Feres* exception to governmental liability under the Tort Claims Act. The plaintiff argues that her separate action does not come within the *Feres* exception, because it applies only to servicemen or their representatives.

In deciding the defendant's motion to dismiss, the Court must determine whether under the applicable state law the plaintiff's claim for relief is independent of her husband's claim, and if so, whether this in itself saves her case from falling within the *Feres* exception, so as to make her claim "recognizable in law" under the Federal Tort Claims Act.

The latter statute provides that the law of the state where the allegedly negligent action occurred governs the issue of liability. 28 U.S.C. § 1346(b). *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). *See, Lambertson v. United States*, 528 F.2d 441 (2d Cir. 1976). The complaint represents that the plaintiff's serviceman-husband was incapacitated for approximately four months while he recovered from burns occasioned by the defendant's negligent landing of a KC–135 aircraft in Alpena, Michigan. Her cause of action for loss of consortium is thus governed by the law of Michigan, the location of the plane crash.[2]

In Michigan, a suit for the loss of consortium includes the "loss of society, companionship, service and all other incidents of the marriage relationship." *Kailmiai v. Firestone Tire Co.*, 87 Mich.App. 144, 273 N.W.2d 906 (1978). Such a claim by one spouse is considered by the Michigan courts to be independent of any claim of the other spouse. A wife's action against a tortfeasor for loss of consortium is an action for damages to her own interest, not a remote consequence of the tortfeasor's injury to the husband. *Montgomery v. Stephan*, 359 Mich. 33, 101 N.W.2d 227 (1960). Thus, even though her husband's claim for relief against the Government is barred by *Feres v. United States, supra*, this alone does not necessarily bar the plaintiff's separate claim for loss of consortium. Under the applicable local law the two claims are not treated as one, and the plaintiff's claim is not merely derivative.[3]

---

**2.** *Compare Carroll v. United States*, 247 F.Supp. 703 (E.D.Mo.1965) wherein the court applied to a plaintiff's similar claim for loss of consortium due to her serviceman-husband's injuries the law of the state where the service plane crashed. Under the decisions in Tennessee, which was the location of the accident, the wife of a negligently injured husband did not have the right to sue for loss of consortium.

**3.** There is language in some Michigan cases which suggests that a wife's recovery for the loss of consortium is contingent upon the husband's recovery for his injuries because the

former is derivative from the latter principal claim. *Hilla v. Gross*, 43 Mich.App. 648, 652, 204 N.W.2d 712 (1972) *citing Bias v. Ausbury*, 369 Mich. 378, 120 N.W.2d 233 (1963). However, it is clear that a wife's claim is derivative only in cases where the two actions of the husband and the wife are consolidated. *Dewey v. Perkins*, 295 Mich. 611, 295 N.W. 333 (1940). The Supreme Court of Michigan, in a case where the claims of a husband and a wife were consolidated, stated "we adhere to the rule that the husband and wife each have separate independent causes of action." *Morrison v. Grass*, 314 Mich. 87, 22 N.W.2d 82 (1946). *See Las-*

The crucial question is whether the plaintiff's claim for relief, although separate and distinct, is nevertheless barred by the *Feres* doctrine, that is, whether the Government is exempt from liability for her injuries as well as those of her husband. There is a considerable body of case law which has developed around this doctrine defining the boundaries of the exceptions to governmental liability as applied to servicemen, or their representatives, who prosecute claims against the military. There are very few courts, and none in the Second Circuit, that have been called upon to determine how the *Feres* doctrine should be applied to persons who claim that they have a separate and independent cause of action flowing from injuries suffered by servicemen.[4] No cases have been found which address the specific issue of whether an independent claim for consortium may be brought against the United States when such claim arises out of injuries to a spouse on active military duty. Nevertheless, the Court is not left without guidance in resolving this issue.

In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court denied recovery in each of three cases where a plaintiff had brought suit against the United States for injuries sustained by a serviceman due to negligence of others in the armed forces. *Feres v. United States*, 177 F.2d 535 (2d Cir. 1949); *Jefferson v. United States*, 178 F.2d 518 (4th Cir. 1949); *Griggs v. United States*, 178 F.2d 1 (10th Cir. 1949). Two of these cases involved representatives' claims for wrongful death. The Second Circuit case of *Feres v. United States, supra,* was a suit by an executrix to recover for her decedent's death caused by the negligence of the United States in quartering him in barracks which burned because of a defective heating plant. The *Jefferson* case involved a plaintiff who discovered that an army surgeon had inadvertently left a thirty inch long towel in his

stomach. In the *Griggs* case an executrix brought an action for the wrongful death of the deceased resulting from his negligent treatment by army surgeons.

The Supreme Court made it quite clear in *Feres* that a serviceman, or his representative, cannot recover for his injuries incident to military service. The several reasons given by the Court for denying the causes of action of the three plaintiffs demonstrate that the underlying rationale of the doctrine was firmly established at its inception. The Court reasoned as follows: First, recovery is unnecessary because a comprehensive system of relief is already available to military personnel and their dependents. Second, the Tort Claims Act only allows claims against the Government under circumstances where a private individual would similarly be liable. No parallel liability exists in these cases because there is no analogous situation where a private individual is given the power to conscript or mobilize a private army with such authority over persons as the Government vests in echelons of command. Third, the act requires the application of the law of the place where the act or omission occurred. It would hardly be a rational plan of providing for those disabled in service to leave them dependent upon geographic considerations over which they have no control and laws which are variable depending upon the situs. Fourth, the scope, nature, legal incidents and consequences of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority, and no federal law permits the recovery sought by the plaintiffs. Fifth, Congress evidenced no awareness that the Tort Claims Act might be interpreted to permit a recovery incident to military service. Finally, soldiers are at a disadvantage in litigating these claims because they lack time

---

kowski v. People's Ice Co.*, 203 Mich. 186, 168 N.W. 940 (1918).

4. *See DeFont v. United States*, 453 F.2d 1239 (1st Cir. 1972); *Van Sickel v. United States*, 285 F.2d 87 (9th Cir. 1960); *Wisniewski v.*

*United States*, 416 F.Supp. 599 (E.D.Wis.1976); *See also Adams v. General Dynamics Corporation*, 385 F.Supp. 890 (N.D.Cal.1974), *affirmed* 535 F.2d 489 (9th Cir. 1976).

and money, and it is difficult in the military context to procure witnesses.[5]

The rationale underlying the *Feres* decision was reaffirmed and strengthened by the Supreme Court in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977). There the Court set forth three factors to be considered when a third party brings suit against the United States alleging injuries to a serviceman: (1) the senselessness of liability turning upon the fortuity of where the soldier happened to be stationed at the time of the injury;[6] (2) the existence of the Veterans' Benefits Act as a substitute for tort liability;[7] and (3) as explained in *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954),

> "the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . . ."

■ By focusing on these three factors in *Stencel,* the Supreme Court provides a means of analysis to be employed in deciding whether a party other than a serviceman may recover against the Government for injuries to a serviceman.[8] *Stencel* involved a suit brought against the United States by a corporation seeking indemnity for damages which it might have been required to pay to an injured serviceman. The Court reasoned first that it makes as little sense to permit the fortuity of the situs of the alleged negligence to affect the Government's liability to a Government contractor for service-connected injuries as it does to permit that situs to affect the liability of the Government to a serviceman. The Court next explained that the Veterans' Benefits Act serves not only to provide a remedy for injured servicemen, but also to clothe the Government in "the protective mantle of the Act's limitation-of-liability provisions." The military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries, such a limitation being "one of the essential features of the Veterans' Benefits Act." 431 U.S. at 673, 97 S.Ct. at 2059. Even though a third party may be required to compensate the injured serviceman when the Government is at fault, as in *Stencel,* the third party's claim against the Government is disallowed in respect of this limitation. As to the third factor, the effect of the action on military discipline, the Court noted that such effect is identical whether the suit is brought by the injured serviceman or a third party. "The trial would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions." 431 U.S. at 673, 97 S.Ct. at 2059.

■ Utilizing the same analysis, the Court finds that a wife's independent claim for relief against the Government for loss of consortium is precluded by the *Feres* exception to governmental liability. As similarly stated in *Stencel,* it makes no more sense to have the plaintiff in such an action have her right to recovery for loss of consortium arising from her husband's service-connected injuries depend upon his ge-

---

**5.** The Supreme Court mentioned this factor even though it noted simultaneously that these claims are generally brought by widows, surviving dependents, or members of the service after discharge. 340 U.S. at 145, 71 S.Ct. 153.

**6.** That the fortuitousness of geography is mentioned as a factor reaffirms the *Feres* rationale listed as third in the text above explaining the *Feres* decision.

**7.** That the existence of the Veterans' Benefits Act precludes tort liability marks an expansion of the *Feres* rationale, which had indicated only

that the Veterans' Benefits Act made recovery in tort unnecessary.

**8.** The three factors identified in *Stencel* have been used by other courts to analyze such claims. Cf. *Daberkow v. United States,* 581 F.2d 785 (9th Cir. 1978) (widow and surviving son denied recovery for a serviceman who died performing duties incident to joint military activities). *Parker v. United States,* 437 F.Supp. 1039 (N.D.Tex.1977) (surviving widow denied recovery for a serviceman who was killed in an automobile collision on a military reservation).

ographic military assignment than it does to have her husband's action determined according to such fortuitous placement. Not all jurisdictions to which the plaintiff's serviceman-husband could be assigned are in agreement as to whether recovery for loss of consortium is permitted.[9] The Supreme Court emphasized that one of the essential features of the Veterans' Benefits Act is to provide an upper limit of liability for the Government with respect to service-connected injuries. The Supreme Court's emphasis weighs as heavily in the case of a claim for relief of a serviceman's spouse as it did in *Stencel* where the Court held that such a limitation of liability would permit the imposition of financial responsibility for a service-connected injury on an innocent third party. Finally, permitting the plaintiff to litigate her claim would have the same adverse affect on military discipline as allowing the serviceman himself to bring an action challenging the wrongful acts of his contemporaries in the military.

The plaintiff urges that *Stencel* does not control here, because the third party in that case did not suffer personal injury as did the plaintiff in the case at bar. The Court, however, considers the potential monetary liability suffered by the third party in *Stencel* as similar to the claim for personal injury of the plaintiff in the present action in that both are serious adverse consequences, and both are alleged to arise solely as a result of the negligence of Government employees. Thus, the rationale, if not the specific holding of *Stencel* is on point. Its analysis leads to the conclusion that the plaintiff's claim falls within the *Feres* exception to governmental liability.

This conclusion is supported by the original rationale given by the *Feres* Court. The similarities are: First, there is no parallel liability in the private sector whereby a wife is allowed to sue for loss of consortium as a consequence of her husband's injuries experienced while he was subject to such plenary authority as the military exer-

cises over persons subject to its command. Second, although the plaintiff's claim for relief is independent of her husband's claim under Michigan law, the federal nature of the relationship between the plaintiff's serviceman-husband and the United States Air Force is not altered by that fact, and no federal law permits the type of recovery sought by the plaintiff in this action. There has been no suggestion in the legislative history of the Act that Congress was aware that the Tort Claims Act might be interpreted in such an anomalous manner that a serviceman-husband performing his military duty would be denied recovery against the Government whose employee's negligence may have caused him serious injury, while his spouse is allowed recovery as a consequence of the same set of facts.

It is significant to note that those cases which are more closely analogous to the instant action have held without exception that independent claims for relief which are rooted in service-connected injuries to persons in the military are barred under the *Feres* doctrine. Most decisions dealing with separate causes of action which arise as a result of injuries to servicemen incident to their service concern survivors' claims for wrongful death. Courts have not been especially concerned with the separateness of the survivors' claims, however many of these claims have in fact been brought by survivors suing in their own right.

The leading case in this area is *Van Sickel v. United States*, 285 F.2d 87 (9th Cir. 1960). In that case, the Ninth Circuit affirmed the District Court's dismissal of a claim brought by the widow and children of a serviceman who died allegedly as a result of negligent treatment administered by Government doctors. The plaintiffs in *Van Sickel* pointed out that Section 377 of the Code of Civil Procedure of the State of California provides them with an original cause of action, separate and distinct from any cause of action which the decedent may

**9.** Michigan recognizes a cause of action for the loss of consortium. Connecticut recently recognized the cause of action in *Hopson v. St. Mary's Hospital*, Conn. , 408 A.2d 260 (1979), which overruled *Marri v. Stamford Street R. Co.*, 84 Conn. 9, 78 A. 582 (1911). Missouri, on the other hand, does not recognize the claim. *See* note 2, *supra.*

have had against the alleged wrongdoer and not subject to the limitations or defenses applicable to whatever claim the decedent himself had. The Court in *Van Sickel* was satisfied that the plaintiffs' cause was not derivative in character, but was a distinct claim to recover damages sustained by them; nevertheless, the Court denied recovery.[10] In reaching its conclusion, the Ninth Circuit noted that in the two wrongful death actions decided by *Feres v. United States, supra,* the United States Supreme Court did not deem it important to mention the representative character of the respective plaintiff's causes. Instead, the *Feres* Court was concerned with the fact that the genesis of the cases before it was an in-service injury sustained by a serviceman.[11]

Other courts have similarly held that separate and independent claims arising as a result of injury to a serviceman are barred by the *Feres* rule. In *DeFont v. United States,* 453 F.2d 1239 (1st Cir. 1972), the Court stated that the suits of both a serviceman's wife for mental anguish and his child for loss of companionship were precluded by *Feres v. United States, supra,* because such damage claims were subject to the incident-to-service limitation set down by the Supreme Court in that case. In *Wisniewski v. United States,* 416 F.Supp. 599 (E.D.Wis.1976) the court held that *Feres* barred a claim for familial and marital disharmony asserted by a serviceman's wife where such a claim was based upon allegations of army medical personnel's negligence in the treatment of her serviceman-husband. *See also Adams v. General Dynamics Corporation,* 385 F.Supp. 890 (N.D.Cal.1974), *affirmed,* 535 F.2d 489 (9th Cir. 1976).

The rationale in the *Feres* decision and its progeny confirm the principle that the Fed-

eral Tort Claims Act does not support such a claim as that of the plaintiff in that it does not fit within the Government's consent to liability expressed in the Act. Accordingly, the defendant's Motion to Dismiss is granted. SO ORDERED.

---

10. It is clear that under the law of California, a cause of action for wrongful death is an independent claim for injuries to the decedent's heirs and not a claim for injuries inflicted upon the decedent. *Helling v. Lew,* 28 Cal.App.3d 434, 104 Cal.Rptr. 789 (1972); *Davis v. Robinson,* 50 Cal.App.2d 700, 123 P.2d 894 (1942).

11. Many courts have dismissed wrongful death actions of survivors without even discussing

whether such actions were independent or representative in character. The primary question has been whether the death occurred in the source of military duty. *See, for example, Watkins v. United States,* 462 F.Supp. 980 (S.D.Ga.1977); *Knight v. United States,* 361 F.Supp. 708 (W.D.Tenn.1972); *Coffey v. United States,* 324 F.Supp. 1087 (S.D.Cal.1971), *affirmed* 455 F.2d 1380 (9th Cir. 1972).