Louis **SHEARER, Individually, and as Administratrix of the Estate of Vernon Shearer, Deceased**

v.

**UNITED STATES of America.**

Civ. A. No. 82–0082.

United States District Court, E.D. Pennsylvania.

Dec. 27, 1982.

William T. Cannon, Philadelphia, Pa., for plaintiff.

Margaret L. Hutchinson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court in this civil action is Defendant's Motion For Summary Judgment. This case is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*

The facts relevant to defendant's motion are essentially undisputed. Plaintiff is the mother and administratrix of the estate of Vernon Shearer. Vernon Shearer was a private in the United States Army in June of 1978, stationed at Fort Bliss, Texas. On June 2, 1978, while Vernon Shearer was on authorized absence from Fort Bliss, he was shot and killed by another off-duty Army private, Andrew Heard. This incident took place off-base in Otero County, New Mexico.

On January 7, 1982, plaintiff filed suit in this Court alleging that the United States had been negligent in failing to exercise proper supervision and control over Private Heard, and that this negligence had been the cause of decedent's being murdered. It was further alleged that Private Heard had been convicted of a previous homicide while in the Army in Germany and that, because of this fact, among others, the Army should have known of Private Heard's dangerous propensities and should have taken steps to prevent him from harming others.

Defendant states two bases in support of its motion for summary judgment: (1) Plaintiff's cause of action is barred by the *Feres* doctrine; (2) Plaintiff's cause of action is barred by the intentional tort exception to the Federal Tort Claims Act.

■ The so-called *"Feres doctrine"* emanated from the United States Supreme Court's holding in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950):

> [T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.

*Id.* at 146, 71 S.Ct. at 159.[1] Relying on *Feres*, plaintiff argues that the "ultimate

---

**1.** The *Feres* doctrine applies in cases in which a personal representative brings an action under a state death statute which is not derivative in nature, but is an original and distinct cause of action granted to such individuals to recover damages sustained by them by reason of the wrongful death of the decedent. *See Harten v. Coons,* 502 F.2d 1363, 1365 (10th Cir.1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1974); *De Font v. United States,* 453 F.2d

question" before this Court is "whether plaintiff's decedent, Vernon Shearer, was engaged in activity 'incident to his military service' at the time of his fatal injury." Plaintiff asserts that her claim is not barred by the *Feres* doctrine because decedent was on authorized leave from his military base at the time of his death and, therefore, his death was not incident to military service.

■ This Court is not persuaded by plaintiff's argument. The ultimate question is not whether decedent was engaged in activity incident to military service when he incurred his injuries. Rather, the "focus ... is upon *when and how the negligent act occurs*" and whether the negligent act was a part of activity incident to service. *Henning v. United States*, 446

. 1239 (1st Cir.1972); *cert. denied,* 407 U.S. 910, 92 S.Ct. 2436, 32 L.Ed.2d 684 (1972); *Siglar v. LeVan,* 485 F.Supp. 185, 190 (D.Md.1980); *Brackin v. United States,* (E.D.Pa. No. 79–1368, Memorandum and Order of Hannum, J., July 20, 1979; *Harrison v. United States,* 479 F.Supp. 529 (D.Conn.1979); ` *Martin v. United States,* 404 F.Supp. 1240 (E.D.Pa.1975); *Van Sickel v. United States,* 179 F.Supp. 791 (S.D.Cal.1959), *aff'd,* 285 F.2d 87 (9th Cir.1960).

2. The specific holding of *Henning* on this issue is as follows:

This argument is erroneous for *Feres* does not limit its holding to injuries occurring in the course of activity incident to service. It also immunizes the Government for injuries arising out of activity incident to service. We think that *Feres* focuses not upon when the injury or when the claim becomes actionable, but rather the time of, and the circumstances surrounding the negligent act.... The focus is thus upon when and how the negligent act occurs.

*Henning,* 446 F.2d at 777.

3. The Third Circuit Court of Appeals recently explained the rationale underlying federal court's refusal to scrutinize military decision-making in the context of an FTCA action:

The primary rationale [for the *Feres* doctrine] was not advanced in *Feres* itself but in two subsequent decisions, *United States v. Brown,* 348 U.S. 110 [75 S.Ct. 141, 99 L.Ed. 139] (1954) and *United States v. Muniz,* 374 U.S. 150 [83 S.Ct. 1850, 10 L.Ed.2d 805] (1963). According to these decisions, the immunity of the federal government from suit was "best explained" by

[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and

F.2d 774, 777 (3d Cir.1971) (emphasis added), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972).[2]

■ Upon application of the *Henning* analysis, this Court finds that plaintiff's action is barred by the *Feres* doctrine. The negligence alleged by plaintiff relates to activity of the United States Army incident to military service. Plaintiff alleges that the Army was negligent in failing to exert reasonable control over decedent's assailant, Private Heard, despite the fact that it had knowledge of Heard's dangerous propensities. We find that these allegations relate directly to decisions of military personnel made in the course of the performance of their military duty and, therefore, are barred by *Feres* and *Henning.*[3] *See*

the extreme results that might obtain if suits under the Tort Claims Act were allowed for ... negligent acts committed in the course of military duty....

*Brown,* 348 U.S. at 112 [75 S.Ct. at 143]. *Accord, Stencel Aero Engineering v. United States,* 431 U.S. [666] at 671–72 [97 S.Ct. 2054 at 2057–58, 52 L.Ed.2d 665]. Under this reasoning, suits for service injuries appear to have two consequences. The first is their effect on the willingness of military personnel to follow directions of their superiors.

The Court in *Stencel,* a subsequent case based on *Feres,* observed that "the relationship between a sovereign and the members of its Armed Forces is unlike any relationship between private individuals." 431 U.S. at 670 [97 S.Ct. at 2057]. Scrutinizing military decisions in civilian courts would "involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions." *Id.* at 673 [97 S.Ct. at 2058]. As we noted in *Jaffee I* [*v. United States* ]:

If claims for injuries sustained by members of the armed forces in the execution of military orders were subjected to the scrutiny of courts of justice, then the civil courts would be required to examine and pass upon the propriety of military decisions. The security and common defense of the country would quickly disintegrate under such meddling. "[A]ctions and essential military discipline would be impaired by subjecting the command to the public criticism and rebuke of any member of the armed forces who chose to bring suit against the United States."

592 F.2d [712] at 717 [3rd Cir.1979], *quoting Jefferson v. United States,* 178 F.2d 518, 519, 520 (4th Cir.1949), *aff'd sub nom. Feres v. United*

*Johnson v. United States*, 631 F.2d 34 (5th Cir.1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

 Furthermore, the Court notes that its finding herein that *Feres* is a bar to plaintiff's claim does not leave plaintiff without remedy. A second basis of *Feres* is the existence of a no fault compensation scheme pursuant to the Veteran's Benefit Act. *Jaffee v. United States*, 663 F.2d 1226, 1235–38 (3d Cir.1981), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). The compensation scheme provided for in the Veteran's Benefit Act is the sole remedy for "service connected injuries." *Id.* See *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977), in which the Court held as follows:

> A compensation scheme such as the Veterans' Benefits Act serves a dual purpose: it not only provides a swift, efficient remedy for the injured serviceman, but it also clothes the Government in the "protective mantle of the Act's limitation-of-liability provisions." See *Cooper Stevedoring Co. v. Kopke, Inc.,* 417 U.S. 106, 115 [94 S.Ct. 2174, 2179, 40 L.Ed.2d 694] (1974). Given the broad exposure of the Government, and the great variability in the potentially applicable tort law, see *Feres,* 340 U.S., at 142–143 [71 S.Ct., at 157], the military compensation scheme provides an upper limit of liability for the Government as to service-connected injuries. To permit petitioner's claim would circumvent this limitation, thereby frustrating one of the essential features of the Veterans' Benefit Act.

*States,* 340 U.S. 135 [71 S.Ct. 153, 95 L.Ed. 152] (1950).
Suits for service injuries would also appear to have a related effect on the decision making of military authorities who give orders. Military decisionmakers might not be willing to act as quickly and forcefully as is necessary, especially during battlefield conditions, if they know they will subsequently be called into a civilian court to answer for their actions. While the Tort Claims Act would not make them personally liable in these circumstances, the prospect of adversarial civilian scrutiny might inhibit the exercise of military discretion.

As we stated in a somewhat different context concerning the Tort Claims Act: "To permit [petitioner] to proceed ... here would be to judicially admit at the back door that which has been legislatively turned away at the front door. We do not believe that the [Federal Tort Claims] Act permits such a result." *Laird v. Nelms,* 406 U.S. 797, 802 [92 S.Ct. 1899, 1902, 32 L.Ed.2d 499] (1972). *See also, Hatzlachh Supply Co., Inc. v. United States,* 444 U.S. 460, 464–65, 100 S.Ct. 647, 650, 62 L.Ed.2d 614 (1980), in which the Court stated as follows:

> Recognizing that the Veterans' Benefits Act provided compensation to injured servicemen, which we understood Congress intended to be the sole remedy for service-connected injuries, we declined to construe the Tort Claims Act to permit third-party indemnity suits that in effect would expose the Government to greater liability than that contemplated under the statutory compensation scheme. In *Stencel,* Congress had provided a remedy, which we thought to be exclusive. Here, however, § 2680(c) denies a tort remedy for certain claims; and we fail to see how the *Stencel* holding that the existence of an exclusive statutory compensation remedy negates tort liability supports the conclusion that if the Tort Claims Act bars a tort remedy, neither is there a contractual remedy.

Because the decedent was on active duty with the Army at the time of his death, plaintiff is entitled to receive the Veterans Administration benefits. *See* Exhibit "A", Docket Entry No. 12.[4]

*Jaffee v. United States,* 663 F.2d 1226, 1232 (3d Cir.1981).
We find that allowance of this suit would involve the same "[s]cutinizing [of] military decisions in civilian courts" that *Jaffee* warns against. *Id.* Consideration of this case would involve "second-guessing military orders, and would ...· require members of the Armed Services to testify in court as to each other's decisions and actions." *Id.*

4. Because we hold that *Feres* is a bar to plaintiff's claim, there is no need to address defendant's assertion that plaintiff's cause of action is

Accordingly, summary judgment will be entered in favor of defendant and against plaintiff.

barred by the intentional tort exception to the FTCA.