In re **"AGENT ORANGE" PRODUCT LIABILITY LITIGATION.**

Thomas **ADAMS, et al.,**
**Plaintiffs-Appellants,**

v.

**UNITED STATES of America, et al.,**
**Defendants-Appellees.**

**No. 343, Docket 86–6127.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 1, 1986.

Decided April 21, 1987.

---

**202**

Benton Musslewhite, Houston, Tex., for plaintiffs-appellants.

Robert C. Longstreth, Trial Atty., Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C. (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Andrew J. Maloney, U.S. Atty. for E.D.N.Y., and Joan M. Bernott, Sp. Litigation Counsel, Washington, D.C., of counsel), for defendant-appellee U.S.

Before VAN GRAAFEILAND, WINTER and MINER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Our discussion of the background and procedural history of this litigation appears in Judge Winter's lead opinion, 818 F.2d 145.

Following settlement of the class action against the chemical companies and the dismissal of all claims against the Government, this action was commenced in the United States District Court for the Southern District of Texas. In January of 1986 it was transferred to the Eastern District of New York by the Judicial Panel on Multidistrict Litigation, and on June 19, 1986 the complaint, like those that preceded it, was dismissed. The claims of the veterans and the derivative claims of their wives and children were dismissed for lack of jurisdiction. The direct claims of the wives and children were dismissed by way of summary judgment for lack of proof of medical causal relation. We hold that the direct claims of the wives and children, like those of the veterans themselves, should have been dismissed for lack of jurisdiction.

In companion Agent Orange opinions filed herewith, we define the Government's decision to use Agent Orange as a military decision, a political decision and the exercise of a discretionary function. These definitions were arrived at by scrutinizing the nature of the governmental action, not the identity of the person challenging it. "There are twelve exceptions to the [Federal Tort Claims] Act, but they relate to the cause of injury rather than to the character of a claimant who may seek to recover damages for his injuries." *Feres v. United States*, 177 F.2d 535, 536–37 (2d Cir.1949), *aff'd*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). It would be anomalous, for example, to characterize a governmental decision as political or discretionary in an action brought by a serviceman but as apolitical or mandatory in an action brought by the serviceman's wife or child. When a challenged decision falls within all three of the above categories, military, political and discretionary, it is imperative that a court look primarily to the "cause of injury rather than to the character of a claimant." However, even when the decision properly may be placed in only one of the three categories, a court should use great circumspection in deciding whether it is the type of governmental action that should be subjected to judicial second-guessing.

Some of the post-*Feres* cases brought by wives, widows and children of servicemen have had their origin in States where the plaintiffs' claims are held to be ancillary or derivative to those of the servicemen. Others have arisen in States where the plaintiffs' causes of action have been held to be independent of those of the servicemen. The result in most cases is the same—the claims are held barred by *Feres* and *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

The following cases are typical of those arising in the "ancillary or derivative claims" jurisdictions: *Hinkie v. United States*, 715 F.2d 96 (3d Cir.1983), *cert. de-*

*nied,* 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984); *Mondelli v. United States,* 711 F.2d 567 (3d Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984); *Lombard v. United States,* 690 F.2d 215 (D.C.Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983); *Scales v. United States,* 685 F.2d 970 (5th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983); *Laswell v. Brown,* 683 F.2d 261 (8th Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *Monaco v. United States,* 661 F.2d 129 (9th Cir.1981), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982); *Harten v. Coons,* 502 F.2d 1363 (10th Cir. 1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975). This Court is in accord. *Kohn v. United States,* 680 F.2d 922 (2d Cir.1982). "As *Stencel* itself illustrates, civilian status alone is not sufficient to lift the bar under *Feres* when a claim involves the same issues as if a serviceman himself sued, for then the relevant policy considerations apply with equal force." *Id.* at 926 (citing *Monaco, supra*).

One of the cases in the "non-derivative or independent claims" group, a case which moved through this Court, was *Harrison v. United States,* 479 F.Supp. 529 (D.Conn. 1979), *aff'd without opinion,* 622 F.2d 573 (2d Cir.), *cert. denied,* 449 U.S. 828, 101 S.Ct. 93, 66 L.Ed.2d 32 (1980). This was a suit for loss of consortium by a serviceman's wife, who resided in Michigan where her claim was considered to be separate and distinct from that of her husband. Applying the *Feres* rationale as reaffirmed and strengthened in *Stencel, supra,* then Chief Judge Clarie held that it barred the claim of the serviceman's wife. He said:

> There has been no suggestion in the legislative history of the Act that Congress was aware that the Tort Claims Act might be interpreted in such an anomalous manner that a serviceman-husband performing his military duty would be denied recovery against the Government whose employee's negligence may have caused him serious injury, while his spouse is allowed recovery as a consequence of the same set of facts.

479 F.Supp. at 535. The following cases from other "non-derivative or independent claims" jurisdictions are in accord: *Gaspard v. United States,* 713 F.2d 1097 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); *De Font v. United States,* 453 F.2d 1239 (1st Cir.), *cert. denied,* 407 U.S. 910, 407 U.S. 910, 32 L.Ed.2d 684 (1972); *United States v. Lee,* 400 F.2d 558 (9th Cir.1968), *cert. denied,* 393 U.S. 1053, 89 S.Ct. 691, 21 L.Ed.2d 695 (1969); *Van Sickel v. United States,* 285 F.2d 87 (9th Cir.1960); *Sigler v. LeVan,* 485 F.Supp. 185 (D.Md.1980).

Of particular interest is an action brought in the United States District Court for the Eastern District of Pennsylvania in 1982 by Louise Shearer, the mother of a deceased serviceman. In Pennsylvania, a cause of action for wrongful death, 42 Pa. C.S.A. § 8301, is possessed by certain specified relatives of the deceased, who recover in their own behalf and not as beneficiaries of the deceased's estate. *McClinton v. White,* 285 Pa.Super. 271, 278, 427 A.2d 218 (1981), *vacated on other grounds,* 497 Pa. 610, 444 A.2d 85 (1982). With obvious reference to section 8301, the district court held that "[t]he *Feres* doctrine applies in cases in which a personal representative brings an action under a state death statute which is not derivative in nature, but is an original and distinct cause of action granted to such individuals to recover damages sustained by them by reason of the wrongful death of the decedent." 576 F.Supp. 672, 673 n. 1. Finding that plaintiff's allegations of wrongdoing "relate directly to decisions of military personnel made in the course of the performance of their military duty," *id.* at 674, the court granted summary judgment dismissing the complaint. The Court of Appeals for the Third Circuit reversed without discussing the Pennsylvania wrongful death statute, 723 F.2d 1102 (3d Cir.1983), but was in turn reversed by the Supreme Court in *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), a decision that is considered to be a major reaffirmation of *Feres* and *Stencel.* The Supreme Court stated that plaintiff's allegation of wrong-

doing "goes directly to the 'management' of the military", that it "would require Army officers 'to testify in court as to each other's decisions and actions'", and that "[t]o permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions." 105 S.Ct. at 3043–44.

These were simply restatements and affirmations of language used time and again by the lower courts that have denied recovery by family members. *See, e.g., Hinkie,* 715 F.2d at 98; *Mondelli,* 711 F.2d at 568–69; *Lombard,* 690 F.2d at 223–26; *Monaco,* 661 F.2d at 133–34; *Scales,* 685 F.2d at 970–74.

Where, as here, the military decision is of such a nature that it properly may be termed a discretionary function, denial of recovery by both military and nonmilitary personnel is doubly warranted. *Abraham v. United States,* 465 F.2d 881 (5th Cir. 1972); *Maynard v. United States,* 430 F.2d 1264 (9th Cir.1970). Like the Court of Appeals for the District of Columbia, "[w]e will not permit a suit for damages occasioned by activities that are not meaningfully separable from a protected discretionary function." *Gray v. Bell,* 712 F.2d 490, 516 (D.C.Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984).

In a companion opinion filed herewith, 85–6153 *et seq.,* we discuss the political nature of the President's decision to authorize the use of Agent Orange and point to that factor as a third cogent reason why there should be no second-guessing by the judiciary.

The judgment of the district court is affirmed except as to that portion which dismisses the so-called direct claims of the wives and children by way of summary judgment. That portion of the judgment is vacated, and the wives' and childrens' so-called direct claims are remanded to the district court with instructions to dismiss them for lack of jurisdiction.

No costs to any party.