Dennis M. SHARKEY, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 697–84C.

United States Claims Court.

July 19, 1989.

Robert Hager, Washington, D.C., for plaintiffs.

Jay Tidmarsh, Washington, D.C., with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer, for defendant.

## OPINION

FUTEY, Judge.

This action is before the court on defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RUSCC 12(b)(4). Plaintiffs, Vietnam veterans and members of their families, claim entitlement to compensation as a result of the United States taking their property in violation of the Fifth Amendment of the Constitution and breaching express and implied contracts. For the reasons stated in this opinion, the court grants defendant's motion to dismiss.

### Factual Background [1]

On February 19, 1979, a complaint was filed in the United States District Court for the Eastern District of New York on behalf of named and unnamed Vietnam veterans and members of their families seeking $10,-000,000,000.00 in damages from numerous chemical companies which produced phenoxy herbicides used to defoliate the jungles of Vietnam between 1962 and 1971. The complaint, based on theories of negligence, strict liability, breach of warranty, intentional tort and nuisance, alleged that tens of thousands of Vietnam veterans were injured as a result of contact with these herbicides, collectively referred to as Agent Orange, which, when manufactured, produce dioxins. Additionally, the complaint asserted that the veterans' exposure to Agent Orange caused miscarriages to veterans' wives and birth defects in their children.

In March of 1979 the district court was jointly petitioned by counsel on behalf of the estate of plaintiff Paul Reutershan and defendant Dow Chemical Company to establish a Multidistrict Litigation Proceeding pursuant to 28 U.S.C. § 1407(c) (1976). In response, the Judicial Panel on Multidistrict Litigation established *In Re "Agent Orange" Prod. Liab. Litig.*, MDL No. 381, in the United States District Court for the Eastern District of New York. Beginning May 8, 1979, cases involving claims based on exposure to Agent Orange were trans-

ferred to the district court to be included in the multidistrict action. In all, almost 600 cases originally filed in state and federal district courts throughout the country were transferred for inclusion in the New York District Court action.

In January of 1980, the defendant chemical companies served third-party complaints upon the United States seeking indemnity or contribution for that portion of a judgment, if any, for which the chemical companies were found responsible. The government moved to dismiss these complaints. The court determined that these claims were barred under the Supreme Court holding in *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), which disallows indemnification or contribution from the United States for damages arising from injuries to a serviceperson where a direct claim for such damages would be barred under *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). District Court Judge Pratt accordingly dismissed these complaints, however, no formal order of dismissal was entered. *In Re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 762 (E.D.N.Y.1980). Upon reconsideration, Judge Weinstein, who succeeded Judge Pratt in the litigation, allowed the government's motion only as to claims of veterans and the derivative claims of family members. *In Re "Agent Orange" Prod. Liab. Litig.*, 580 F.Supp. 1242 (E.D.N.Y.1984), *mandamus denied*, 733 F.2d 10 (2d Cir. 1984), *appeal dismissed*, 745 F.2d 161 (2d Cir.1984), *aff'd*, 818 F.2d 204 (2d Cir.1987). Subsequently Judge Weinstein also granted the motion to dismiss as to the remaining claims of veteran's wives and children. *In Re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1221 (E.D.N.Y.1985), *aff'd*, 818 F.2d 204 (2d Cir.1987).

Plaintiffs directly asserted claims against the Government based on the Federal Torts Claims Act, 28 U.S.C. § 2671 *et seq.* (1982) in their eighth amended complaint filed in July of 1984. Judge Wein-

---

**1.** A detailed account of the proceedings and the factual background of the agent orange litiga-tion can be found at 597 F.Supp. 740 (E.D.N.Y. 1984) and 818 F.2d 145 (2d Cir.1987).

stein dismissed these claims, finding that they were barred by the legal doctrine set forth in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 and the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a).[2] *In Re "Agent Orange" Prod. Liab. Litig.,* 603 F.Supp. 239 (E.D.N.Y.1985), *aff'd in part and dismissed in part,* 818 F.2d 194 (2d Cir.1987). Additionally, the direct claims of the servicemen, their wives and children and the derivative claims of the veteran's wives and children were dismissed for lack of jurisdiction. *In Re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 201 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). Judge Pratt had previously rejected claims against the United States for injuries to Vietnam veterans allegedly resulting from exposure to Agent Orange premised on the Federal Torts Claims Act, the Constitution, civil rights violations, mandamus and equity. *Ryan v. Cleland,* 531 F.Supp. 724 (E.D.N.Y.1982).

On May 7, 1984, just prior to trial, plaintiffs agreed to settle their claims against the chemical companies for the sum of $180,000,000.00, plus interest. The government did not participate in this settlement. The chemical companies made no admission of liability in connection with plaintiffs' claims, and both sides reserved all rights to claims against the United States.

Eleven days of nationwide hearings were held by the district court to give the class members an opportunity to be heard on the merits of the settlement. On September 25, 1984, the court issued an opinion which concluded, "after weighing the uncertainties and legal obstacles that would accompany years of protracted litigation were the case to go to trial ... the settlement should be approved." *In Re "Agent Orange" Prod. Liab. Litig.,* 597 F.Supp. 740 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). This decision, along with others issued by the district court throughout the litigation, were appealed by various plaintiffs to the United States Court of Appeals for the Second Circuit. The circuit court, *inter alia,* affirmed the district court's dismissal of all claims against the United States and approved the settlement, except for the distribution plan. Seven petitions for certiorari were filed with the Supreme Court relating to various aspects of the litigation, all of which were denied. *See In Re "Agent Orange" Prod. Liab. Litig.,* 689 F.Supp. 1250, 1252–54 (E.D.N.Y.1988).

On December 27, 1984, a complaint was filed in the United States Claims Court by persons who claim to be, generally, members of the class which was certified in the multidistrict action.[3] Plaintiffs also filed, on that date, a motion to certify a class.[4] The complaint alleges both a taking under the Fifth Amendment and numerous contract claims. In their taking claim plaintiffs contend that they were forced to settle the causes of action which they asserted in the multidistrict action for $180,000,-

---

**2.** 28 U.S.C. § 2680, entitled "Exceptions," provides in part:

The provisions of [the Federal Torts Claims Act] shall not apply to—
(a) Any Claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such Statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

**3.** Plaintiffs moved for leave to file a first amended complaint on August 19, 1985, and on September 10, 1985, filed a motion for leave to file a second amended complaint. Plaintiffs'

motion of August 19, was thus denied as moot, and the court subsequently allowed plaintiffs' motion to file a second amended complaint. On October 14, 1988, three days prior to oral argument on defendant's motion to dismiss, plaintiffs filed a motion for leave to file a third amended complaint. The court denied this motion by order dated June 16, 1989.

**4.** Plaintiffs' motion to certify a class was denied without prejudice by order of this court dated June 16, 1986 (Yanello, J.). That order provided that plaintiff could "refile any similar motion at an appropriate time...." Although plaintiffs did not refile such a motion, this court allowed plaintiffs to proceed with their arguments for class certification on October 17, 1988, after arguments on defendant's motion to dismiss.

000.00 while the actual value of their claims was $10,000,000,000.00, thus they are entitled to $9,820,000,000.00 in damages, the difference between what they claim was the true value of their claims and the amount of settlement. Plaintiffs contract claim asserts that the United States has caused damages in the amount of, "no less than 9.82 billion dollars."

On March 28, 1988, defendant filed a motion to dismiss pursuant to RUSCC 12(b)(4), and an opposition to plaintiffs request for class certification. Oral argument was held by this court on October 17, 1988.

### Discussion

Plaintiffs contend that defendant's motion to dismiss under 12(b)(4) should be considered a motion for summary judgment under RUSCC 56 since the parties have presented matters outside the pleadings. Summary judgment under RUSCC 56 requires that the moving party show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," RUSCC 56(c), whereas under a 12(b)(4) motion the defendant must show that plaintiff has alleged no claims upon which this court can grant relief. In determining whether summary judgment is appropriate, the court will consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any...." RUSCC 56(c). By contrast, the court may not consider "matters outside the pleadings" under a 12(b)(4) motion. If such matters are presented and not excluded by the court, the motion is to be treated as one for summary judgment. RUSCC 12(b). Finding that no matters outside the pleadings need be considered for disposition under the motion presently pending before the court, it will be considered as a motion to dismiss for failure to state a claim upon which relief can be granted under RUSCC 12(b)(4).

Defendant's motion to dismiss states that plaintiffs have failed to state a claim upon which relief may be granted since plaintiffs did not possess "property" within the meaning of the Fifth Amendment, nor can they establish that a taking occurred. Additionally, defendant avers that plaintiffs had no contractual relationship, express or implied, with the United States, and may not maintain an action as third-party beneficiaries of contracts between the United States and the chemical companies which produced the herbicides.

Dismissal under RUSCC 12(b)(4) is appropriate where no facts are asserted which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); *Chavez v. United States*, 15 Cl.Ct. 353, 356 (1988). The court must presume plaintiff's factual allegations to be true, and construe them in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *White Mountain Apache Tribe of Ariz. v. United States*, 8 Cl.Ct. 677, 681 (1985).

### Taking

Plaintiffs' complaint alleges that their property rights were taken by the United States through inverse condemnation, in that:

[T]he United States effectively expropriated the plaintiffs' causes-of-action, and/or choses-in-action, the plaintiffs' right to health, enjoyment of life and the pursuit of happiness, and the plaintiffs other property rights; the United States voluntarily and knowingly exercised control over, and interfered with the use of such property rights; the United States utilized legislation, imposed regulations, asserted legal principles and took other actions which were incompatible with the rights of ownership and enjoyment of the plaintiffs of their causes of action against the chemical companies, their causes of action in tort against the Government and their fundamental rights to health, safety and protection; the defendant deprived the plaintiffs of the benefits of the use of said property rights and interests; the defendant regulated and imposed regulations with respect to the property rights of the plaintiffs so as to constitute a "taking"; the

defendant interfered with the "possession, use and disposition of the property rights" of the plaintiffs; the defendant made substantial encroachments upon the use and enjoyment of such property rights by the plaintiffs; and the defendant undertook such conduct so as to constitute a "substantial interference" with the use and enjoyment of the property rights of the plaintiffs and that all of such actions were sufficient, singularly and/or in combination thereof, to constitute a "taking" as that term is employed by the Tucker Act, the Constitution of the United States, and the law construing both the Tucker Act and the Constitution....

Specifically, plaintiffs assert that by invoking the Defense Production Act of 1950, codified at 50 U.S.C. App. §§ 2061–2166 (1952), which required the chemical companies to produce Agent Orange, the United States "provoked" the chemical companies to assert the "Government contractor's defense," and allowed the chemical companies to employ Section 707 of the Defense Production Act (50 U.S.C. App. § 2157), forcing plaintiffs to settle the case against the chemical companies for a nominal amount.[5] Plaintiffs also contend that by asserting legal defenses to bar plaintiffs' recovery, the United States took their property in the form of causes of action against the government.

To state a claim under the takings clause, plaintiffs must establish that they owned property which the United States took for a public purpose. This determination must be made on the basis of the particular facts of each case. *See United States v. Central Eureka Mining Co.*, 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958). "[N]ot all economic interests are 'property rights'; only those economic advantages are 'rights' which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion." *United States v. Willow River Power Co.*, 324 U.S. 499, 502, 65 S.Ct. 761, 764, 89 L.Ed. 1101 (1945). Interests or rights which are not legally protected do not constitute "property" for purposes of the Fifth Amendment. *See Ruckelshaus v. Monsanto*, 467 U.S. 986, 1001–04, 104 S.Ct. 2862, 2871–2873, 81 L.Ed.2d 815 (1984); *United States v. Willow River Power Co.*, 324 U.S. at 503, 65 S.Ct. at 764.

Plaintiffs do not question the validity of the Defense Production Act, the government contractor's defense, or those defenses which barred plaintiffs' recovery from the United States or defendant chemical companies. Plaintiffs instead assert that they owned "property" in the form of causes of action against the chemical companies and the United States. They contend that this property was taken in that (1) the United States successfully asserted defenses which barred recovery against the

---

**5.** 50 U.S.C. App. § 2071(a) provides:

(a) The President is authorized (1) to require that performance under contracts or orders (other than contracts of employment) which he deems necessary or appropriate to promote the national defense shall take priority over performance under any other contract or order, and, for the purpose of assuring such priority, to require acceptance and performance of such contracts or orders in preference to other contracts or orders by any person he finds to be capable of their performance, and (2) to allocate materials and facilities in such manner, upon such conditions, and to such extent as he shall deem necessary and appropriate to promote the national defense.

Section 2157 of this title, which the defendant chemical companies asserted as a defense, states in relevant portion:

No person shall be held liable for damages or penalties for any act or failure to act resulting directly or indirectly from compliance with a rule, regulation or order issued pursuant to this Act [Section 2061 to 2167 of this Appendix], notwithstanding that any such rule, regulation, or order shall thereafter be declared by judicial or other competent authority to be invalid.

50 U.S.C. App. § 2157. The military contractors defense, which the chemical companies also asserted as a defense shields government contractors from "liability for injuries caused by products ordered by the government for a distinctly military use, so long as it informs the government of known hazards or the information possessed by the government regarding those hazards is equal to that possessed by the contractor." *In Re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 187, 190 (2d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988).

government, and (2) the chemical companies asserted defenses which forced plaintiffs to settle their claims for a nominal amount of damages.

The United States is immune from suit except to the extent it waives that immunity. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). That immunity has not been waived for suits by servicemen for injuries arising out of, or suffered in the course of, activity incident to military service. *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152. The United States properly asserted its sovereign immunity as a defense in the multidistrict action thus denying any recovery by the plaintiffs from the government. It is therefore axiomatic that plaintiffs had no legally protected property interest in a cause of action against the government. "[I]ndividuals do not have a property interest in being able to sue the United States, given the fact that, presumptively, individuals cannot sue the Government for damages; they can only bring suit if Congress has expressly waived the Government's immunity." *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 309 n. 15 (5th Cir.1985), *cert. denied*, 475 U.S. 1081, 106 S.Ct. 1458, 89 L.Ed.2d 716 (1986). Thus this claim does not allege the elements of a taking. *See United States v. Willow River Power Co.*, 324 U.S. at 503, 65 S.Ct. at 764.

Moreover, if the United States were found to have taken plaintiffs' property by defending itself from suit, the United States could never successfully defend itself in litigation without subsequently being subject to a claim for just compensation pursuant to the Fifth Amendment. This result is clearly undesirable.

Additionally the United States did not effect a taking of plaintiffs' causes of action by requiring the chemical companies to perform contracts under the Defense Production Act. Although the chemical companies did assert 50 U.S.C. App. § 2157 as a defense in the multidistrict action, the district court determined that this section "would not bar plaintiffs' claims." *In Re "Agent Orange" Prod. Liab. Litig.*, 597 F.Supp. at 845. Thus, the assertion of this defense had no bearing on the outcome of the litigation or plaintiffs' claims. Furthermore, no ruling was made regarding the viability of the government contractor's defense since plaintiffs voluntarily settled their claim with the defendant chemical companies prior to trial. Therefore the United States did not take plaintiffs' causes of action by requiring production of Agent Orange under the Defense Production Act. Additionally, the government's actions could only constitute a taking of property under the Fifth Amendment if plaintiffs had a legally protected right in their causes of action. *See United States v. Willow River Co.*, 324 U.S. at 503, 65 S.Ct. at 764. To find plaintiffs' claims to be property within the meaning of the Fifth Amendment Takings clause would create a cause of action in all instances where legislation or legal doctrines allow for legitimate defenses to claims. Such an outcome runs contrary to basic principles of law. Accordingly, the court finds plaintiffs' argument, asserting that the United States effected a taking of their causes of action, without merit.

Plaintiffs' complaint also states that:

[T]he Government effectively cooperated with the Chemical Company Defendants, and obstreperously refused to cooperate with the Plaintiffs, with regard to the proof, the evidence and the legal arguments relative to the Government Contract Defense and other affirmative defenses asserted by the Defendant Chemical Companies in the New York action.

.     .     .     .     .

In effect, the Government embarked upon a course of conduct during the trial of the case in New York which was calculated to, and did, obstruct civil justice and make it difficult, if not impossible, for Plaintiffs to effectively prove their case against the Chemical Companies. They fought to keep depositions from being taken of vital witnesses; they fought to keep from having to produce vital and relevant documents; and in

many other respects, they embarked upon a procedural and substantive campaign of legal interference and obstruction which posed grave harm to the viability of the Plaintiffs case against the Chemical Companies in the New York Class Action. By reason of such conduct, the [plaintiffs were] forced to accept a nominal settlement against the Chemical Companies....

This allegation amounts to a restatement of plaintiffs' argument that their causes of action were taken by the government when it defended itself from suit, and, as discussed above, does not state a basis for recovery.

■ Further, the complaint asserts that: [T]he United States Government, in view of the tenuous basis of the legality of the conflict in Vietnam, undertook a special solicitude toward those involved in the Vietnam conflict and created a fiduciary obligation toward such servicepersons therein involved, which included the express and/or implied duty to provide medical monitoring, to assist and cooperate with the Vietnam veterans in their efforts to prove their causes of action against the Chemical Companies; to finance and effectuate fair, objective and non-biased epidemiological and statistical studies with respect to the cause and effect relationship arising out of dioxin exposure; to furnish a safe design for the specifications of products, such as Agent Orange, which would be used in Vietnam; to disclose to the servicemen its of (sic) the risks and hazards with regard to the Agent Orange product; its duty to safely handle and use the Agent Orane (sic) product in Vietnam; and in other respects to work with and assist the Vietnam veterans in any efforts they might undertake to assert their rights against the Chemical Companies or other parties responsible for the adverse health effects upon them and their families which related in any way to their exposure to Agent Orange. [However,] the United States Government disregarded all of these fiduciary duties, and in so doing, the Defendant substantially interfered with, regulated, invaded and effec-tively deprived the Plaintiffs of their causes and/or choices in action against the chemical companies.

Plaintiffs do not allege that the government took physical possession of developed medical evidence. Instead, they contend that the United States failed to develop, and inhibited the development of, medical evidence concerning the effects of exposure to Agent Orange which the United States had an obligation to produce. The desire to have this evidence developed, however, is not a property right, but a mere expectation, and as such, does not entitle plaintiff to recovery under the Fifth Amendment. *See Andrus v. Allard*, 444 U.S. 51, 66, 100 S.Ct. 318, 327, 62 L.Ed.2d 210 (1979); *Americo Mosca v. United States*, 189 Ct.Cl. 283, 290, 417 F.2d 1382, 1386 (1969), *cert. denied*, 399 U.S. 911, 90 S.Ct. 2197, 26 L.Ed.2d 565 (1970).

■ The remaining claims in this allegation do not fall within the jurisdictional basis of claims cognizable in this court. The Tucker Act, codified at 28 U.S.C. § 1491 (1982), which sets forth the Claims Court's basic jurisdiction, states in relevant portion:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department ... or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). This statute "does not create substantive rights enforceable against the United States for money damages." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983). A claim must be based upon a violation of a source of law set forth in the Act which can fairly be interpreted as mandating the payment of compensation from the Federal Government to assert jurisdiction in this court. *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976); *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 609, 605–07, 372 F.2d 1002, 1007–09 (1967).

The complaint asserts that the United States owed plaintiffs a "fiduciary obligation." However, such an obligation must be premised on a contract, or source of law specified in the Tucker Act which can be interpreted as mandating compensation. *Juda v. United States*, 6 Cl.Ct. 441 (1984). Plaintiffs cite no source of law, or as discussed *infra*, contract, upon which this obligation could be based.[6] Thus this claim is not within this court's jurisdiction.

■ Furthermore, those claims, such as "failing to properly organize the spraying campaign so as to avoid, to a great extent, spraying upon the soldiers in the field," which sound in tort, are beyond the scope of this court's jurisdiction. 28 U.S.C. § 1491; *Aetna Casualty & Sur. Co. v. United States*, 228 Ct.Cl. 146, 164, 655 F.2d 1047, 1059–60 (1981). Additionally, it is well established that the due process clause of the Fifth Amendment does not mandate the payment of money. *See Alabama Hosp. Ass'n. v. United States*, 228 Ct.Cl. 176, 180–81, 656 F.2d 606, 609 (1981), *cert. denied*, 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 (1982). Thus, to the extent that plaintiffs' allegations can be construed as a claim under the due process clause, this court has no jurisdiction over such a cause of action. *Id.*

■ The complaint further alleges that the plaintiffs in the multidistrict action were forced to accept nominal settlement against the chemical companies by reason of the voluntary, conscious and willful conduct of the government in:

> failing to provide prophylactic clothing and other protective gear to the combat soldiers exposed to Agent Orange spraying in the field; in failing to train those who did the spraying and those who had the Agent Orange sprayed upon them, with regard to the best and safest methods which should be used in order to minimize human exposure to the spraying; in failing to properly organize the spraying campaign so as to avoid, to a

great extent, spraying upon the soldiers in the field; in failing to warn the soldiers not to drink water contaminated with Agent Orange or to eat food that might have gotten into the food chain; in engaging in chemical warfare by spraying Agent Orange and other herbicides upon food crops for the purposes of destroying those food crops and thus making it possible for them to get into the food chain of the American serviceperson, as well as the Vietnamese population; in failing to monitor the Plaintiffs during their service in Vietnam and following their service in Vietnam so as to enable the Government to more readily and quickly treat the Vietnam serviceperson's problems and to understand the cause and effect relationship with respect to those problems; in failing to provide proper medical protection and care during service in Vietnam and following their service in Vietnam; in failing to use an alternative herbicide which did not contain dioxin (it is undisputed that Agent White which did not contain dioxin, was available to the United States Government and had been used by the United States Government in Vietnam, and while its cost was slightly higher than Agent Orange it was known to be just as effective in accomplishing the goal of defoliation as Agent Orange); and in failing to take other steps which would bring about an avoidance, or at least a minimization, of exposure and adverse health consequences arising from such exposure on the part of those servicemen who serviced in the field in Vietnam, as well as those who were involved in the Ranch Hand project.

This contention, that the United States took plaintiffs' causes of action against the chemical companies because the government was the actual cause of the servicepersons adverse health effects, is disingenuous, and lacking any semblance of a taking claim. Plaintiffs only remedy against the government for such action would lie in

---

**6.** Additionally, "where the Federal Government takes on or has control or supervision over tribal monies or properties, [a] fiduciary relationship normally exists with respect to such

monies or properties...." *Navaho Tribe of Indians v. United States*, 224 Ct.Cl. 171, 183, 624 F.2d 981, 987 (1980). Plaintiffs' claim clearly falls outside this limited doctrine.

tort, over which this court has no jurisdiction.[7] 28 U.S.C. § 1491; *Aetna Casualty & Sur. Co. v. United States*, 228 Ct.Cl. at 164, 655 F.2d at 1059–60. Plaintiffs cannot now recover under the Fifth Amendment takings clause what they were barred from recovering under tort. To allow otherwise would open the government to suit for a taking any time a claimant was barred from recovery under another cause of action.

Plaintiffs cite numerous cases in support of their contention that the causes of action which they asserted in the multidistrict action are property within the meaning of the Fifth Amendment. However, these cases are easily distinguishable.

In *Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966), the Supreme Court found that a loss-carryback refund claim was property for purposes of § 70a(5) of the Bankruptcy Act, 30 Stat. 565, as amended, 11 U.S.C. § 40(a)(5) (1964), not the Fifth Amendment takings clause. In related cases, *Juda v. United States*, 6 Cl.Ct. 441 (1984) and *Nitol v. United States*, 7 Cl.Ct. 405 (1985), plaintiffs, inhabitants of the Marshall Islands who were relocated in order for the United States to conduct atomic testing, brought an action against the government seeking compensation under the Fifth Amendment for a taking of physical property, not causes of action. In *In re Aircrash in Bali Indonesia*, 684 F.2d 1301 (9th Cir. 1982), two separate plaintiffs were awarded damages by a jury in the amount of $300,000.00 and $651,500.00 for deaths of the decedents caused by a plane accident in Indonesia. The district court refused to reduce the amount of those verdicts according to the limits imposed by the Warsaw Convention, which was adopted by the United States in 1934. 19 Stat. 3000 (1934). On appeal, the Ninth Circuit found that the

Convention's limit on liability should be applied. In its opinion, the court stated that plaintiffs' wrongful death claims were "property" within the Fifth Amendment and "plaintiffs have a right to compensation if their claims have been unreasonably impaired by the treaty."[8] *In Re Aircrash in Bali*, 684 F.2d at 1312. In *Bali*, the plaintiffs' claims had been reduced to a judgment, whereas, in the case at bar, plaintiffs settled prior to any judicial determination as to whether compensation should be awarded.

Plaintiff's cause of action in *Shanghai Power v. United States*, 4 Cl.Ct. 237 (1983), aff'd, 765 F.2d 159 (Fed.Cir.1985), *cert. denied*, 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985), arose out of the confiscation of the plaintiff corporation's power plant in 1950 by the People's Republic of China. The Foreign Claims Settlement Commission determined the value of the property to be $144 million including interest. In 1979, President Carter settled all outstanding claims of United States nationals against China for $80.5 million. Under this settlement Shanghai Power would receive $20 million as compensation, $124 million less than the amount determined by the Foreign Claims Settlement Commission to be the value of the property. Shanghai Power filed a complaint in the Claims Court asserting a Fifth Amendment taking based on the difference between the value of the property as determined by the Foreign Claims Settlement Commission, and that which plaintiff would receive under the President's settlement. The Claims Court determined that "plaintiff's claim against the [Peoples' Republic of China] had the law back of it and amounted to property for purposes of the fifth amendment" because "international law gives plaintiff an entitlement to full and just compensation, and that our government has consistently

---

**7.** Moreover, the Second Circuit determined that the veteran's claims based on tort cannot be sustained against the government. *In Re "Agent Orange" Prod. Liab. Litig.*, 603 F.Supp. 239 (E.D. N.Y.1985), *aff'd in part and dismissed in part*, 818 F.2d 194 (2d Cir.1987).

**8.** The Ninth Circuit did not decide whether the Warsaw Convention affected a taking because it

determined that question should properly be brought before the Court of Claims. Similarly, the Supreme Court did not decide whether a taking occurred in *Dames & Moore v. Regan*, 453 U.S. 654, 101 S.Ct. 2972, 69 L.Ed.2d 918 (1981), finding that issue not ripe and falling within the jurisdiction of the Court of Claims.

endorsed that right." *Shanghai Power v. United States,* 4 Cl.Ct. at 241. By contrast, in the case at bar, plaintiffs' causes of action, which they contend are property, do not have the law behind them and are thus not property. Furthermore, in *Shanghai,* the court found that there had been no taking of the property under the Fifth Amendment. It held that a review of the President's settlement of a private claim as a Fifth Amendment taking would be an "intrusive exercise of Judicial Power." *Shanghai Power v. United States,* 4 Cl.Ct. at 249. *See also, Belk v. United States,* 12 Cl.Ct. 732 (1987), *aff'd,* 858 F.2d 706 (Fed.Cir.1988) (finding no taking was affected by the United States signing of Algiers Accords which prohibits United States nationals from prosecuting claims related to seizure of hostages). Similarly, adjudicating claims arising out of military conflict would be intrusive and beyond the court's proper judicial role. *See Stencel Aero v. United States,* 431 U.S. at 673, 97 S.Ct. at 2058. Accordingly, the court is unpersuaded by the cases submitted by plaintiffs that the United States affected a taking of plaintiffs' property.

Although this court is sympathetic to the plight of the Vietnam veterans and their families, the claims that plaintiffs have presented are not compensable under the takings clause of the Fifth Amendment. The Fifth Amendment "does not undertake ... to socialize all losses, but those only which result from a taking of property. If damages from any other cause are to be absorbed by the public, they must be assumed by act of Congress and may not be awarded by the courts merely by implication from the constitutional provision." *United States v. Willow River Co.,* 324 U.S. at 502, 65 S.Ct. at 764.

### Contract

Plaintiffs contend that the United States breached its "express and/or implied contractual obligations to the Plaintiffs" by purchasing and using Agent Orange so as to allow plaintiffs to be exposed to the chemicals. They assert that through the government's participation in the production of Agent Orange the United States "became in effect a manufacturer as well as a vendor of Agent Orange, and is charged with being responsible for, on both an expressed and implied basis, the fitness of the Agent Orange product and thus there exists a contractual express and/or implied warranty with respect to the fitness of said product which runs from the United States Government in favor of the Plaintiffs."

■ The Claims Court, and its predecessor, the Court of Claims have specifically stated that claims against the United States arising from injuries to servicepersons brought in contract sound in tort, and as such, jurisdiction does not lie in this court. *Jackson v. United States,* 216 Ct.Cl. 25, 45, 573 F.2d 1189, 1199 (1978); *Bibbs v. United States,* 206 Ct.Cl. 896, 897, 521 F.2d 1405 (table), *cert. denied,* 423 U.S. 985, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975); *Hargrove v. United States,* 1 Cl.Ct. 228, 230 (1982). Even if plaintiffs' claims did not sound in tort, plaintiffs could not recover under contract. There was no express contract between the servicepersons and the United States which would directly allow for such recovery. Additionally, this court has no jurisdiction to hear suits based on implied-in-law contracts, *Aetna Casualty & Sur. Co. v. United States,* 228 Ct.Cl. at 164, 655 F.2d at 1059–60, and plaintiffs have not alleged facts sufficient to form the basis of an implied-in-fact contract, which requires mutuality of intent, consideration and lack of ambiguity in offer and acceptance. *See Yachts America, Inc. v. United States,* 779 F.2d 656, 661 (Fed.Cir. 1985), *cert. denied,* 479 U.S. 832, 107 S.Ct. 122, 93 L.Ed.2d 68 (1986).

■ Plaintiffs further contend that they are third party beneficiaries of the contracts between the United States and the chemical companies to produce Agent Orange, which state that in performing the contracts to produce the chemicals, the parties would comply with the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 135 *et seq.* (1970), and that the product would be fit for its intended purpose. "To entitle one to sue as a third-par-

ty beneficiary of a contract to which he is not a party, the contract must reflect the intent not merely to benefit the third-party but also to give him the direct right to compensation or to enforce that right against the promisor." *Baudier Marine Electronics v. United States*, 6 Cl.Ct. 246, 249 (1984), *aff'd*, 765 F.2d 163 (Fed.Cir. 1985) (*citing German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912); *Robo Wash, Inc. v. United States*, 223 Ct. Cl. 693, 697–98 (1980); *Orchards v. United States*, 4 Cl.Ct. 601, 609–12 (1984), *aff'd*, 749 F.2d 1571 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); 4A. Corbin on Contracts § 775 (1951)). Plaintiffs do not point to anything in the contract between the United States and the chemical companies which would allow plaintiffs to enforce any rights against the United States, nor does the court find an intent to benefit the plaintiffs. Therefore plaintiffs cannot maintain an action as third-party beneficiaries.

The complaint additionally alleges that by virtue of the employer/employee relationship between plaintiffs and defendant, and "by reason of the special relationship which existed in that context, a contractual indemnity and/or contractual warranty arose which is similar to the warranty found between seamen and employers." In support of this proposition plaintiffs cite *Mitchell v. Trawler Racer Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), which held that seamen have a special status as "wards of the Court" because they are subject to the unusually "perilous dangers of the sea." Plaintiffs suggest that they are similarly wards of the United States because they were subjected to the perils of war. Consequently, an implied-in-fact, as well as in law, contractual warranty and indemnity arose which runs from the United States to the Plaintiffs. The decision in *Mitchell*, however, was premised upon a claim sounding in tort, not a claim in contract. Thus the court finds this case inapplicable to the case at bar.

### Conclusion

Construing plaintiffs' allegations as true, and in a most favorable light, the court finds that plaintiffs have failed to state a claim upon which relief can be granted. Furthermore, the Claims Court is not the proper forum for plaintiffs claims against the government arising from exposure to Agent Orange. To adjudicate claims which arise out of injuries incurred in military action would "involve second-guessing military orders," *Stencel Aero v. United States*, 431 U.S. at 673, 97 S.Ct. at 2059, and would therefore contravene public policy. Moreover, Congress has provided benefits for veterans so as to avoid such litigation. *Id.*

Accordingly, dismissal under RUSCC 12(b)(4) is appropriate. The issue of class certification is therefore moot. The Clerk is ordered to dismiss the complaint. No costs.